No. 915.

## HAMILTON ET AL., EXECUTORS, *v.* FEARY.

CONTRACT.—*Breach of.—Damages, When Remote and Consequential.— Recovery.*—A party injured by the breach of a contract or covenant is entitled to recover such damages only as proximately resulted from the breach and were within the contemplation of the parties when the contract was entered into. In such case, remote and con- sequential damages can not be recovered.

LANDLORD AND TENANT.—*Breach of Covenant to Repair.—Damages.— Personal Injury.—Recovery.*—Where a landlord leased premises, and covenanted with the tenant to repair and put in a safe condi- tion an excavation thereon, which was in close proximity to a well from which the tenant had to obtain water for domestic purposes, and the landlord failed and refused to make such repairs, though often requested to do so, and the tenant, while at the well obtaining water, was precipitated into the excavation by the falling in of the earthen walls thereof, and was injured, the tenant can not recover damages for such injuries in an action for breach of covenant to re- pair, such damages being too remote and consequential, and not in contemplation of the parties to the covenant.

SAME.—*Breach of Covenant to Repair.—Remedy of Tenant.—Damages.— Recovery.—Personal Injury.*—In such case, on failure and refusal of the landlord to make the repairs, as he covenanted to do, the tenant had the right to make the necessary repairs himself and charge their cost to the landlord, and, under the principle that it is the tenant's duty to reduce the damages as much as reasonably lies in his power to do so, he could not be permitted to allow the defect in the prem- ises to remain, being fully cognizant of the same, and then sue for the injuries resulting from the accident caused by the dangerous condition of the premises.

SAME.—*Tort.—Sufficiency of Complaint.—Failure to Show Negligence.— Personal Injury.*—In such case, the tenant can not recover in an action upon *tort*, where the complaint shows that the plaintiff knew of the existence of the excavation before she took possession of the premises, and, with such knowledge, continued to occupy the prop- erty during the period of the lease, after the landlord, upon demand, had failed and refused to make the repairs; that the landlord could not have given the tenant any further information of the defect than she admits she possessed; that the landlord practiced no fraud or deception upon the tenant in connection with the condition of the ex- cavation; and that the cause of injury, if latent and not patent, was

no more patent to the landlord than to the tenant, therefore failing to show the landlord guilty of negligence contributing to the injury.

From the Shelby Circuit Court.

*T. B. Adams* and *I. Carter* for appellant.

*A. C. Harris, K. M. Hord* and *E. K. Adams*, for appellee.

REINHARD, J.—This case was tried in the court below, upon the second paragraph of the complaint, to which a demurrer was overruled.

The appellee was the tenant of the appellant, in a dwelling house owned by the latter. The action was for the recovery of damages for a personal injury sustained by the appellee while in the occupancy of the premises. The trial was by a jury, and there was a verdict in favor of the appellee for $2,500, upon which, over appellant's motion for a new trial, and other motions, judgment was rendered.

The overruling of the demurrer is the first specification of error.

The substance of the paragraph of complaint to which the demurrer was addressed, is as follows:

That on the 22d day of February, 1890, the appellee leased, in writing, from the appellant the premises described; that by the terms of the lease appellee was to pay, as rent therefor, the sum of $8.33 per month, in advance; that the tenancy was to begin on said date and to continue for six months thereafter; that she was to keep the property in good condition, not sublet the same, and to give possession thereof at the end of six months. A copy of the lease was filed with this paragraph of complaint, as exhibit "A."

It is further alleged that appellee did not take possession under the lease on said day, and that after the execution of the lease, and before appellee took possession

of the property, it was agreed between the parties that appellee should not, and would not, be required to pay the first month's rental until she had taken full possession.

It is then averred that there was, at that time, and for several months subsequent thereto, located upon said lot and in the rear of said house, a circular excavation, about five feet in depth and about seven feet in diameter, which appellant had caused to be made, intending thereby to make a cistern; that a portion of the said dwelling house was then badly in need of being papered, the walls being smoked and dingy in appearance; that after the signing of said lease, to wit, on the 24th day of February, 1890, and before any act had been done thereunder, and before possession had been taken by the appellee, and before there was any breach of the terms of said lease by either party, appellee having discovered for the first time the excavation aforesaid, and the condition of the walls aforesaid, refused to take possession of said premises under the said lease, or to pay any sum of money as rental for said premises under said lease, or to comply with any of the terms of said contract; that thereupon, and upon said day, appellee and appellant entered into a parol modification of said lease, as follows: That the said Hamilton, to induce appellee immediately to take possession of said premises as his tenant, and to pay him the said rental therefor, then and there agreed with appellee that if she would, on that day, take possession of said premises and continue as tenant therein for the said period of six months, at the rate and under the terms mentioned in said lease, and if she would, on that day, pay him the sum of $8.33 in cash, as the first month's rental, that he would immediately thereafter finish said excavation and make a good cistern, by making the same deeper and walling up the same, and would

cover up and repair the said excavation so that the same
would and could not endanger the lives or bodies of
persons who should go upon said lot or in proximity to
the place where the excavation existed; that appellant
also agreed to paper said house and put the whole thereof
in good condition for the use of the appellee, who desired
the use of all of said property for a dwelling for herself
and family; that thereupon, and before appellee had taken
possession of said property, she paid the appellant the
sum of $8.33, and immediately thereafter went into the
possession of said premises under said lease and said
modification thereof, and occupied the same under said
lease, as modified, for and during the period aforesaid,
for all of which she fully paid appellant at the rate afore-
said, and in all things fully performed her part of said
agreement and the said modification thereof; that at the
time of said renting, and during the period of said ten-
ancy, the appellant had located and maintained, near the
edge of said excavation, a well, in which was a pump,
from which, under said lease, appellee obtained water
for domestic purposes, said well being the only place on
said lot from which water could be obtained; that appel-
lant complied with his said agreement to paper the walls
of the said house, but that, although often requested so
to do, prior to the injuries herein set out, he neglected
and refused to complete said cistern, and allowed the
same to remain in the unfinished condition aforesaid
during the whole of said period of six months; that here-
tofore, to wit, on the 26th day of July, 1890, and in the
night time, and while appellee was prudently and care-
fully trying to get some needed water from said well by
means of said pump, and while she was standing upon
the ground near said excavation, and no nearer than was
necessary in order to get said water, she being near to
said pump and in the proper place to get water there-

from, the earth surrounding said excavation, and upon which she was standing, caved and fell into said excavation so suddenly and unexpectedly to her that, without any fault or negligence on her part, she was thereby precipitated and thrown violently and with great force into said excavation, and upon a piece of timber lying at the bottom thereof, resulting in serious bodily injury to her, as hereinafter set out; that said excavation was made, as set out, and without any walls or other barriers thereto, whereby said adjoining earth could be held in place, and that by reason of the same remaining in such condition during the period aforesaid, the earthen walls of said excavation had become, at the time of said injury, so undermined and in such dangerous condition as to result in the injury aforesaid, which condition was perceptible to appellant; that appellee had no knowledge, prior to said injury, that the earth surrounding said excavation was in said undermined and dangerous condition, and she believed, up to said time, that the same was firm and would support her weight thereon; that by reason of said fall appellee sustained the following injuries, to wit.

Then follow a description of the injuries and an averment that the same were not caused by the act, fault or negligence of the appellee, but were wholly the result of the said wrongful and negligent acts of appellant.

The complaint then proceeds to specify the damages and concludes with a prayer for $5,000 judgment.

A copy of the lease is set out, and, as indicated in the complaint, it contains no stipulation for the making of repairs on the part of the appellant.   Assuming that the modified agreement was such as obligated the appellant to place the excavation in a condition of safety, does the appellee show herself entitled, by the averments of the complaint, to the remedy here pursued?

Appellee's counsel construe the action to be upon the contract to repair. As such, is the complaint sufficient? Without an express agreement to make repairs, it does not devolve upon the landlord to do so. This is conceded. Assuming that, in the present case, there is such an agreement, what redress is the tenant entitled to for a breach of the obligation?

Appellant's counsel contend that in such case the tenant may either abandon the premises, or make the repairs himself and recoup the expense therefor in an action by the landlord for rent.

On the other hand, the appellee's position is that the tenant need not pursue either of these remedies, but may sue in damages and recover for any injury proximately flowing from the breach of the covenant. Taylor Landlord and Tenant, section 330; *Buck* v. *Rodgers*, 39 Ind. 222; *McCoy* v. *Oldham*, 1 Ind. App. 372.

That this position is well taken, we shall not undertake to controvert.

It may be stated, as a general rule, that for a breach of contract in any case the injured party is entitled to recover such damages only as proximately resulted from the breach, and were within the contemplation of the parties when the contract was entered into. Damages which are remote and speculative can not be recovered. 5 Am. and Eng. Encyc. of Law, 13.

In this respect the rule is not different from what it would be if the contract to repair had been between the tenant and a mechanic or workman employed by her to do the work. The only damages recoverable in such case would be the difference between the price agreed upon and the actual cost of the work if the employer had hired another to do it, and possibly such other damages as were sustained by reason of the delay. This would be especially true if the employe had repudiated the con-

tract after reasonable notice to her, or had positively refused to perform it; for, upon such refusal, it would have been the privilege of the employer to treat the contract as rescinded, and she could have hired the work to be done by another.

We shall not undertake to assert that if the employe had repeatedly promised to do the work upon being requested to do so, and had thus led the employer to rely upon his carrying out the promise, he might not be held liable as for special and consequential damages, even for a personal injury incurred under the circumstances of the present case.  But even then there could be no recovery unless the employer had done all that she reasonably could do to reduce the damage as much as practicable.

Applying this rule to the case in hand, it may be conceded that there are circumstances under which a tenant may recover special and consequential damages for the breach of the landlord's covenant to repair.  Thus it was held in *Buck* v. *Rodgers*, *supra*, that where the landlord had agreed to furnish his tenant a sufficient quantity of rails to keep his fences in repair, so as to protect the crops, and had failed to do so, and the cattle had broken in and destroyed the crops, the landlord was liable to the tenant for the damages occasioned by the injury to the crops.  But this and other similar holdings are predicated upon the supposition that the tenant or lessee had used such reasonable means as were in his power to prevent or lessen the damages. The Supreme Court has repeatedly declared and given effect to this principle, and in a very recent case has expressly decided that the case of *Buck* v. *Rodgers*, *supra*, was determined in full recognition of the same.  *Hendry* v. *Squier*, 126 Ind. 19.

In the case just cited the lessor had agreed to place a new roof upon the store house of which the lessee was

the occupant with a stock of goods. By the failure of the lessor to comply with his covenant, the lessee's goods were damaged by a leak in the roof, for which he sued the lessor for damages. The complaint averred that the tenant had repeatedly requested the landlord to make the repair, but that the latter had failed and refused to do so. It was held, that under these circumstances the tenant could not recover the damages occasioned by the injury to his goods; that upon the landlord's refusal he should have made the repairs himself and charged them to the landlord.

It is averred in the paragraph of complaint under consideration, that the appellant, "although often requested so to do, prior to the injuries herein set out, neglected and . *refused* to complete said cistern, and allowed the same to remain in the unfinished condition aforesaid, during the whole of said period of six months."

It was said, in the case of *Hendry* v. *Squier, supra:* "As shown by the averments in the pleading, the condition of this roof was well known to the appellant long before the time when the landlord was to repair it by putting on a new roof. And it is further averred that the appellant requested the repairs to be made, and the appellees refused to make the repairs. This gave the appellant the right to make the necessary repairs and charge them to appellees. *Hopkins* v. *Ratliff*, 115 Ind. 213. Certainly, after such refusal appellant could not voluntarily permit his goods to remain in the building and suffer injury, and recover the damage from the appellees. Yet, under these circumstances, the appellant allows his goods to remain in this end of the building, and be damaged by the rainfall, when, for aught that appears in the pleading, it would have been a small expense to have repaired it, or that even a new roof upon

the building would have cost much less than the damages sustained to the goods.''

In this particular the case at bar does not differ materially from the case cited. In both cases the pleading showed that the landlord had, long before the injury, refused to make the repairs. Where this is the case it would seem to be fruitless for the tenant longer to rely upon the landlord's promise. He would have the right to make the necessary repairs himself and charge their cost to the landlord. Under the principle that it is his duty to reduce the damages as much as reasonably lies in his power to do so, he could not be permitted to allow the defect in the premises to remain, being himself fully cognizant of the same, and then sue for the accident resulting from the dangerous condition of the property.

The case under consideration can not be distinguished from the one cited by saying that in the latter case the tenant might have removed his goods to another part of the building. The court does not base its conclusion upon this fact. It holds that under such circumstances his remedy was to make the repairs and charge them to the landlord. This ruling does not conflict with the cases which decide that the tenant, instead of making such repairs himself, might recover in damages the diminution of the value of the rent during the time the premises remain out of repair. While in such cases the landlord is clearly guilty of a violation of his contract, the tenant can not remain inactive and allow special damages to accrue, and recover them from the landlord, when, at slight expense, he might have averted the injurious consequences complained of.

The principle adverted to applies not only to breaches of contracts, but to torts as well. ''In case of wrongful injury to person or property, the injured party is required to use reasonable exertion to lessen or moderate the re-

sulting damage." 1 Suth. Dam., section 90, and cases cited in second edition.

As we have stated, the appellee treats this case as though the complaint declared upon a breach of contract and not upon tort. But it is our opinion that such damages are not the natural and ordinary result of a breach of the covenant, and were not in contemplation of the parties when the contract was entered into. Such damages are too remote and speculative, and could only be recovered as special and consequential damages, under circumstances hereinbefore adverted to.

We think if there is any liability under the facts set up in the complaint, it must be upon the theory of negligence, as upon tort. To determine whether or not there was actionable negligence, it must first be ascertained what if any duty the appellant owed the appellee and the manner in which the appellant failed to discharge such duty. The duties owing by a landlord to his tenant are various, but they are limited. The landlord does not insure the safety of the premises, nor does he impliedly warrant them to be inhabitable or fit for certain uses, and, as a general rule, the tenant, under the maxim *caveat emptor*, assumes all the risks incident to the occupancy, having complete control and dominion over the premises. To this general rule there are, however, several exceptions. Thus the landlord is liable where the premises contain some hidden defect or defects, or are infected with some noxious disease, rendering them dangerous or uninhabitable, and of which dangerous elements or defects the landlord had some knowledge or information, but which were not open to the view of the tenant and of which he was ignorant or uninformed. And so the landlord is answerable where he controls or retains possession of a portion of the premises, or a portion is used in common by two or more tenants, and an

injury occurs through some negligence or fault of the landlord upon that portion over which he has the control or which is used in common. Still another instance of liability on the part of the owner is where he, though not bound to do so, undertakes to make repairs, and makes them in so negligent or unskillful a manner as to produce injury to the tenant. Also, where the landlord has covenanted to make repairs, and upon being notified has repeatedly promised and led the tenant to believe in good faith that he will make them. The liability of the lessor in these, and perhaps other instances, arises from the principle that he owes the lessee' a duty, and if, by the lessor's failure or negligence to discharge such duty, and without any contributing fault of the lessee, the latter sustains injury, a right of action arises in favor of the lessee or tenant, for the damages sustained. Buswell Pers. Inj., section 82, *et seq.;* 1 Taylor L. and T. (8th ed.), section 175*a*; 1 Wood L. and T. (2d ed.), section 379; *Lucas* v. *Coulter*, 104 Ind. 81; *Deller* v. *Hofferberth*, 127 Ind. 414; *Purcell* v. *English*, 86 Ind. 34; *Toole* v. *Beckett*, 67 Me. 544; *Gregor* v. *Cady*, 82 Me. 131; *Kirby* v. *Boylston Market Ass'n*, 80 Mass. 249; *Bowe* v. *Hunking*, 135 Mass. 380; *Minor* v. *Sharon*, 112 Mass. 477; *Gill* v. *Middleton*, 105 Mass. 477; *Wellington* v. *Downer, etc., Oil Co.*, 104 Mass. 64; *Cowen* v. *Sunderland*, 145 Mass. 363; *Willy* v. *Mulledy*, 78 N. Y. 310; *Cesar* v. *Karutz*, 60 N. Y. 229; *McAlpin* v. *Powell*, 70 N. Y. 126, 26 Atl. Rep. 155; *Arnold* v. *Clark*, 45 N. Y. Sup. Ct. 252; *Flynn* v. *Hatton*, 43 How. Pr. 333; *Butler* v. *Cushing*, 46 Hun, 521; *Snyder* v. *Gorden*, 46 Hun, 538; *Kabus* v. *Frost*, 50 N. Y. S. C. 72; *Scott* v. *Simons*, 54 N. H. 426; *Little* v. *McAdaras*, 38 Mo. App. 187; *Reichenbacher* v. *Pahmeyer*, 8 Ill. App. 217; *Mendel* v. *Fink*, 8 Ill. App. 378; *Pollack* v. *Pioche*,

35 Cal. 416, 95 Am. Dec. 115, with notes; *Godley* v. *Hagerty*, 20 Pa. St. 387.

The appellee admits, in her complaint, that she knew of the existence of the excavation even before she took possession of the premises, and with such knowledge continued to occupy the property for the period of six months, though the appellant had, upon demand, failed and refused to make the repair which he had covenanted to make. The appellant could not have given the appellee any more information of the defect than she admits she possessed. To avoid this dilemma she undertakes to aver that the hidden portion of the defect consisted in the ruinous condition of the banks of the excavation, and not in the excavation itself, and she insists that it was the duty of the appellant to have disclosed these to her. She does not aver that the appellant had any peculiar knowledge of these other than she had herself; at least the facts pleaded show that she had ample time and opportunity for investigation, and there is no pretense that the appellant practiced any fraud or deception upon her in connection with the condition of the walls of the excavation. It must be clear, therefore, that if the cause of the injury was a latent and not a patent danger, it was no more patent to the owner than to the lessee, and it does not appear wherein he violated any duty in failing to apprise her of the same. If we should treat the complaint, therefore, upon the theory of a latent defect, we encounter the insurmountable obstacle that it fails to show the appellant guilty of any negligence; and hence, whether the appellee was guilty of contributory negligence or not, there is no right of action. See Buswell Pers. Inj., section 84; Taylor Landlord and Tenant, section 175*a*.

But if we take the other end of the dilemma, and say that the particular duty which the appellant owed the appel-

lee here was not to disclose to her the existence of the latent defect of the banks of the excavation, but to fill up the latter and place the premises in safe condition, we then come back to the other obstacle, already mentioned in reviewing the complaint as upon contract, that the appellee has failed to reduce or moderate the damages, as she could have done by making the repairs herself and charging them to the appellant.

In addition to all this, it is very questionable, we apprehend, whether, under the pleading, she does not show herself guilty of contributory negligence. The well from which she got water was in close proximity to the alleged dangerous excavation. She had occupied the premises with the dangerous excavation from February to July. The banks were not walled up, and there was nothing to prevent the changing seasons from having their full effect upon the earth surrounding the cavity. The appellee was bound to make use not only of her senses, but also of her knowledge and reasoning faculties. She must have known that during all this time the earth constituting these embankments had become liable, under the varying influences of the atmosphere and the weather, to crumble and give way, and hence it is very difficult to perceive how she could have been free from contributory fault by venturing so near to the dangerous pitfall. And so, if we regard this complaint as counting upon tort for negligence, and there was fault in the appellant in failing to repair, or in failing to disclose the defect, there was likewise fault on the part of appellee in not avoiding the danger.

From what we have said, it must be apparent, we think, that we regard the complaint as totally insufficient to state a cause of action, either as upon contract, for consequential and special damages, or as upon tort, for

the negligent failure of the appellant to perform his duty as landlord.

Our conclusion is that the demurrer should have been sustained.

In view of this conclusion, it will not be necessary to consider errors alleged to have occurred after the ruling upon the demurrer.

Judgment reversed.

Ross, J., was absent.

Filed Oct. 20, 1893; petition for a rehearing overruled Jan. 12, 1894.