(13 App. Div. 570.)

O'DWYER v. O'BRIEN.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. NEGLIGENCE—DANGEROUS PREMISES—CONTRIBUTORY NEGLIGENCE.
    Contributory negligence appears as a matter of law where plaintiff, while carrying a large clothes basket, and not looking in the direction in which she was going, tripped and fell on a walk, the boards of which she knew to be loose and uneven.

2. LANDLORD AND TENANT—INJURY TO TENANT—LANDLORD'S LIABILITY.
    A landlord is liable for injuries to his tenant resulting from the condition of the premises, where such condition was caused by negligence of the landlord in work done on the premises, for his own purposes, and during the continuance of the tenancy.

3. SAME—PREMISES USED IN COMMON BY TENANTS—INJURY TO TENANT.
    The rule that it is the duty of a landlord leasing different parts of a building to several tenants to keep in a reasonably safe condition the avenues by, which each tenant may reach the part occupied by him does not apply to the keeping in repair of an alley by which a tenant reaches a house occupied solely by him, though another tenant who does not use the alley occupies a house on the same lot.

Appeal from trial term, Erie county.

Action by Sarah O'Dwyer against Thomas J. O'Brien to recover for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Kenefick & Love, for appellant.
George W. Cothran, for respondent.

WARD, J.   The defendant owned a tenement house on the south
side of Seneca street, in the city of Buffalo.   It was occupied by two
tenants.   The rear portion, some two years before the accident here-
after referred to, was leased by the defendant to the plaintiff's hus-
band.   The front portion was occupied by another tenant.   The
only means of access to the rear portion of the house from the street
that was used in connection with that portion was an alleyway about
4 feet wide, extending from the street back about 50 feet to the
entrance of the husband's premises.   At the street there was a
gate or gateway entering this alley about 3 feet wide.   From this
gate to the entrance to the husband's premises there were two
planks, which seemed to have afforded a safe walk. · The plaintiff's
evidence tended to show that, during the time she had resided there,
there was, in addition to the two planks, a third plank between the
two planks and the building, shorter than the others, and not fast-
ened down.   This third plank extended to the gateway, and at the
end next to the gate, at the time of the accident, stuck up above the
ground from two to three inches.   In February, 1894, this plank
walk was taken up by defendant's direction, to repair a sewer there-
under.   The two planks were restored to their original condition,
and the plaintiff claims that the loose plank next to the house was
left in the condition hereinbefore described.   Between that time
and the 9th of May following, several members of the plaintiff's
family had tripped up over the end of this loose plank at the gate;
and it is quite clear from the evidence that the plaintiff was aware
of the condition of this plank, and fully understood the situation
of the walk at the time of her injury.   Her counsel, upon this ap-
peal, seems to concede as much in his points.   On the morning of
the 9th of May, 1894,—a bright, clear morning,—the plaintiff had
passed out through this alley to obtain a basket full of clothes from
a place outside, and soon returning, with a large wash basket full
of clothes, about three feet wide and four feet long, carrying the
basket in front of her, she, without looking ahead of her, was passing
through the gateway.   The plaintiff testifies:

"I carried the basket of clothes in front of me.   It was a large wash basket.
The basket was about three feet wide, and was four feet long.   It was an or-
dinary clothes basket.   The plank which stuck up was inside of the gate.   I
just stepped inside the gate, and this board caught my foot, and threw me for-
ward.   Q. How did you get in the gate with the clothes basket?   A. I went
in kind of sideways.   I was looking across the street, and I was looking kind
of sideways, and this board took me, and threw me forward.   Q. What were
you looking across the street for?   A. Because I heard a lady hollering, across
the street, and I looked across to see what she was hollering about.   Saw a
lady at the window.   I could not swear who it was."

When the plaintiff rested, the counsel for the defendant moved
for a nonsuit, upon the grounds—First, that the plaintiff had not
shown herself free from contributory negligence; and, second, that
the defendant owed no duty to the plaintiff as to that portion of the
walk inside of the gate.   The motion was denied, and the defendant

gave proof, and, upon the close of the whole evidence, the motion was renewed, upon the same grounds, and, being again denied, was excepted to. · The counsel for the defendant asked the court to charge the jury that if the walk and the alley, under the evidence of the case, were occupied and used only by the plaintiff and her family as tenants of the defendant, and no other tenant of the premises, then the plaintiff could not recover, which was refused, and the defendant's counsel excepted.

The plaintiff utterly failed in establishing her freedom from contributory negligence. From the above statement of facts, it will be seen that the evidence tends strongly to show that she was guilty of contributory negligence, as a matter of law. Knowing, as she did, the condition of this plank, which created an obstruction at the gateway, she should have paid some attention to where she was going, as her vision in a manner was obstructed, and her locomotion interfered with, in carrying the burden in front of her; but, instead of doing so, she was looking across the street while proceeding on her journey. The nonsuit should have been granted for that reason. Stephenson v. Gaslight Co. (Sup.) 14 N. Y. Supp. 67, and cases there cited.

The appellant invokes the rule that the lessor of a building, in the absence of fraud or any agreement to that effect, is not liable to the tenant or others lawfully upon the premises by his authority for their condition, or that they are tenantable, and may be safely and conveniently used for the purpose for which they were apparently intended. Jaffe v. Harteau, 56 N. Y. 401, and cases there cited. The evidence does not disclose any specific agreement between the defendant and the lessee of the rear portion of the premises that the alleyway should be rented to or exclusively used by this lessee, but it does appear, and without contradiction, that, as a matter of fact, the alleyway was only used by this lessee, and not by the tenant occupying the front portion of the premises, or necessary to be used by such tenant in the enjoyment of the property occupied by him. It also appears that this alleyway was the only means of communication between the premises let to the plaintiff's husband and the street. It is fair to assume from the situation of the premises and the circumstances attending the occupancy that the alleyway was leased as a part of the premises occupied by the plaintiff's husband and herself, or was appurtenant to the same.

The respondent's counsel contends that this case comes within the rule that where a landlord leases different parts or apartments in a building to several tenants, each tenant occupying only a portion of the house, it is the landlord's duty to see that the means by which each tenant can go to and from the portion of the premises occupied by him is kept in reasonable condition of safety and repair; citing Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077, and kindred cases. It is difficult to see how this rule has any application here. It only applies to passages, stairways, or alleys used in common by the different tenants of one building. In the case at bar the alleyway was only used by one tenant, and was a part only of one tenancy, and therefore the same rule would be applied as if

the plaintiff's husband were the sole tenant of the building. Had the defendant permitted the alleyway to remain in the same condition as when it was first rented to the tenant, then the contention of the defendant in this respect could be sustained. But it appears that the defendant, for purposes of his own, during the existence of the tenancy, interfered with this alleyway,—dug it up; and there was evidence tending to show (which made it a question for the jury) that he did not leave the alleyway in as good condition for use as when the premises were rented. So the question arises, if there was negligence on the part of this defendant in interfering with this alleyway, and as a result of that negligence the plaintiff was injured, whether she would not have an action therefor. It would seem upon principle that she would if she was free from contributory negligence; and, this being so, we must sustain the trial court in its refusal to charge as requested by the defendant's counsel, as the granting of that request would have defeated the plaintiff, without permitting her to go to the jury in the aspect of the case we have just considered.

It is proper here to say, in view of another trial, that the learned trial judge, in his charge, seemed to convey the impression, in one branch thereof at least, that the rule as to tenants using alleyways or passages in common might be applicable to this case. This was error. We think that, upon this branch of the case, no liability can attach to the defendant except as a result of his interference with the alley after the tenancy had commenced.

The judgment should be reversed, and a new trial should be granted, with costs to abide event. All concur.