POLLACK v. PERRY. (No. 3459–253.)*

(Commission of Appeals of Texas, Section B. Dec. 14, 1921.)

1. Landlord and tenant ⬠164(7) — Tenant, knowing floor would sink or sway, but making no investigation, held charged with notice of defect.

Where a tenant had known for 20 days prior to an accident that a board in the floor would sink and sway, but did not even remove the linoleum to find out the cause of the sinking and swaying, she was charged with notice of the extent of the defect in the floor.

2. Landlord and tenant ⬠164(7) — Tenant knowing of defective plank in floor held guilty of contributory negligence.

Where a tenant, whose landlord had agreed to make repairs, had known for 20 days before an accident that a plank in the floor was defective, but did not replace it herself, or even make an investigation to ascertain the nature and extent of the defect or attempt to guard herself in any other way than by placing an easily moved hatrack thereon, and at the time of the accident took no notice and paid no attention to the defective plank, she was guilty of contributory negligence as a matter of law.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Mrs. Mary Perry against Henry Pollack. A judgment for plaintiff was affirmed by the Court of Civil Appeals (217 S. W. 967), and defendant brings error. Reversed and rendered.

Harry P. Lawther, of Dallas, for plaintiff in error.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for defendant in error.

HAMILTON, J. Mrs. Mary Perry brought this suit for damages for injuries alleged to have been caused her by the breaking of a rotten plank in the floor of a house rented by her, from month to month, by oral contract, from Henry Pollack. The house was known as 2716 Elm street, Dallas, Tex. As a part of the rental contract, Pollack agreed to repair the house. He did so immediately, but inadvertently left the rotten board in the floor. Plaintiff occupied the premises from May 2, 1916, to November 2, 1916, having full control thereof, without the appearance of any defect in the floor. On November 2d she noticed a sagging or swaying of the plank and three times requested defendant to repair it. He failed to do so, and on November 23, 1916, Mrs. Perry stepped on the board, 3¼ inches wide, and broke through, incurring injuries, damages for which are sought herein. For full statement of the case, see opinion of Court of Civil Appeals, 217 S. W. 967.

Among other defenses, plaintiff in error pleaded contributory negligence on the part of the defendant in error. Verdict was returned, answering special issues, and, in accordance therewith, judgment was rendered in the district court in favor of defendant in error for $3,750. Plaintiff in error appealed, and the judgment of the district court was affirmed by the Court of Civil Appeals at Dallas.

Plaintiff in error, by one of his several assignments, raises the question of the correctness of the Court of Civil Appeals in its holding that Mrs. Perry was not guilty of contributory negligence barring recovery.

Defendant in error had known of the defective condition in the floor for 20 days before the injury. Plaintiff in error made no false statement to defendant in error in regard to the condition of the floor, nor did he conceal from her the defective condition thereof.

"Anybody could see it that came in. He didn't have to step on it to notice it. Anybody could know when the bending place sunk down about that deep (indicating). The linoleum was sunk down at that place, and you could see it from looking at it, without going and looking at it; you could see it if you paid any mind to that linoleum, if you pay any attention, to where you walk you can see; if you don't, you won't see; you could notice it. At the present time you have got to look at it, pay attention; at the present time, I had a hatrack standing in that bending place. I put a hatrack over that place until I could let Mr. Pollack know. * * * I had had that hatrack sitting over the place all the time. I tried to keep it there, but some one moved it; I don't know who moved it; so many people going in there and going in and out. Some one moved it that day that I got hurt, I guess. When some one came in, and I thought it was a customer, I was in the back room, and I heard somebody come in, and I went out of my room and went through Paul's place, where he slept; he had a bed in there that he slept on, and then I went through a curtain, went in one side to that door to get out of that place,

one little door that I have; I went from my room through the door. I went through Paul's room, and to get in the front room I had to go through a curtain, and I saw a man there, and I started to go to him. He was at the door, trying to get in the door; he wasn't already in the door. I was walking towards him, and I didn't notice this place; I didn't pay any mind to that; I put my foot on it, and I went right down; my left foot went right through the hole, and my left leg went through the hole to the knee. My leg went down as far as it could, and my knee stopped it."

The quotation above is from Mrs. Perry's testimony, as it appears from the statement of facts.

We have found no adjudication, by the courts of this state of the question raised by the assignment, as between landlord and tenant, and are therefore driven for precedents and analogies to decisions of other states.

In Thomas Martin v. Mary Ann Surman, 116 Ill. App. 282, the action was to recover for personal injuries which the defendant in error claimed to have suffered when and because she stepped through the floor of her summer kitchen upon premises occupied by her under a verbal lease from plaintiff in error to her husband. In that case, Mrs. Surman, the person injured, stated that—

She "could see them [the boards of the floor] decaying. Every time you stepped on them you would go in and out. They bent. We were always careful of them. * * * I thought it was dangerous because it was always going in and out. There was no support for it, when anybody would step on it. Even if a baby would go over it; it would bend up and down. * * * The room is about as light as this courtroom. It was light enough. You could see. I hadn't any business in the summer kitchen, except to carry that stuff to the ice box."

The court, in its opinion, after quoting from other opinions, said:

"In the case at bar the danger was apparent to the plaintiff—defendant in error here—and she had no right to go on carelessly exposing herself to a known and obvious danger, and rely upon the landlord's alleged promise to repair to afford, not immunity from injury, but compensation for injuries resulting proximately from her own carelessness. That one cannot recover for injuries suffered in consequence of his or her contributory negligence as a proximate cause is the established law in this state."

The judgment of the lower court was reversed for that reason. Defendant in error in this case, in her brief, attempts to distinguish her action and to justify herself by calling attention to the fact "that she had forgotten about, or was not thinking about, the swaying plank, her mind being on the customer."

In O'Dwyer v. O'Brien, 13 App. Div. 570, 43 N. Y. Supp. 815; a plank, forming a part of a walk leading from the gate, through an alleyway about 4 feet wide, about 50 feet to the entrance of the rented premises, stuck up above the ground from 2 to 3 inches at the end next to the gate opening into the street. Plaintiff had asked the landlord to repair the walk, and he had promised to do so. Under the rental contract, he had agreed to keep the premises in repair. The plaintiff had passed out through this alley to obtain a basket full of clothes from a place outside, and soon returning, with a large wash basket full of clothes, about 3 feet wide and 4 feet long, carrying the basket in front of her, she, without looking ahead of her, was passing through the gateway. The plaintiff testifies:

"I carried the basket of clothes in front of me. It was a large wash basket. The basket was about 3 feet wide, and was 4 feet long. It was an ordinary clothes basket. The plank which stuck up was inside of the gate. I just stepped inside the gate, and this board caught my foot, and threw me forward. Q. How did you get in the gate with the clothes basket? A. I went in kind of sideways. I was looking across the street, and I was looking kind of sideways, and this board took me, and threw me forward. Q. What were you looking across the street for? A. Because I heard a lady hollering, across the street, and I looked across to see what she was hollering about. Saw a lady at the window. I could not swear who it was."

When the plaintiff rested, counsel for defendant moved for a nonsuit upon the ground that the plaintiff had not shown herself free from contributory negligence. The motion was denied. The court, in reviewing the action, said:

"The plaintiff utterly failed in establishing her freedom from contributory negligence. From the above statement of facts, it will be seen that the evidence tends strongly to show that she was guilty of contributory negligence, as a matter of law. Knowing, as she did, the condition of this plank, which created an obstruction at the gateway, she should have paid some attention to where she was going, as her vision in a manner was obstructed, and her locomotion interfered with, in carrying the burden in front of her; but, instead of doing so, she was looking across the street while proceeding on her journey. The nonsuit should have been granted for that reason."

[1, 2] Defendant in error in this case first noticed the swaying on November 2d; on November 23d the plank broke through with her. At no time in the 20 days during which she observed the sunken and swaying place in the floor did she even so much as remove the linoleum from the place for the purpose of seeing the floor and trying to find out the cause of the sinking and swaying. If she did not know the extent of the danger to which she was exposed, it was because she made no effort whatever to find out the extent of it. The first appearance of the sagging and swaying in the floor on November 2d, aft-

er she had occupied the premises during six months with no sign of defect or disrepair, was sufficient to put her on notice that something unusual was the matter. She knew there was a defect. It was obvious without looking under the linoleum. She says she reported the sunken or sagging condition to Pollack. She must have thought it dangerous, otherwise there would have been no occasion to report it to Pollack. But in reliance on that report, she could not ignore, in her conduct, that known defect, thereby assuming the risk of injury from the defect, until actual injury had been incurred thereby, and then claim damages from plaintiff in error for negligence in repair, though he was negligent. To so hold would be to require plaintiff in error to take better care of defendant in error than she would take of herself. She evidently thought the place was dangerous. She set a hatrack over it, which she says some one removed, although she tried to keep it there. The defective plank was in the floor of a room used as a secondhand store, where many people came, according to defendant's testimony. For her to attempt to guard herself from the sinking place by placing around it, or over it, so instable a thing as a hatrack, and then to rely upon that to prevent her from stepping into the sunken place, in such a situation and under such circumstances, was to expose herself to the risk of injury from the existing visible defect in that floor. The cost of replacing the plank was small, and she had the right to repair the plank and to deduct the cost from the rent. She went out to meet her prospective customer without having her mind on the defect, and without even thinking about it, and stepped on the rotten board. Her failure to inspect the plank in the sunken place to ascertain the nature and extent of the defect and the consequent danger she might incur if she should step into that place, and her failure to use any substantial means to prevent herself from stepping into it, to say nothing of her failure to repair it herself, combined with her failure to "notice this place" and to "pay any mind to it" cannot be construed into a reliance by her upon Pollack to afford her immunity from danger, but, at best, can be construed only as a reliance upon him for compensation for injuries that might result proximately from her own carelessness. The defect was open and obviously apparent. She considered it dangerous. She "didn't notice that place," nor did she "pay any mind to that" at the time the plank broke. These manifest a lack of care and attention on her part, amounting to contributory negligence barring recovery. Hamilton v. Feary, 8 Ind. App. 615, 35 N. E. 48, 52 Am. St. Rep. 485; Reams v. Taylor, 31 Utah, 288, 87 Pac. 1089, 8 L. R. A. (N. S.) 439, 120

Am. St. Rep. 930, 11 Ann. Cas. 51; Bianchi v. Del Valle, 117 La. 587, 42 South. 148.

We do not hold that there may not be injuries resulting to tenants from the negligence of the landlord in repairing, where he is under contract to repair, for which recovery may be had. We merely hold that this case is not such a one.

We recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and that judgment here be rendered that defendant in error take nothing by this suit, and that she pay all costs incurred herein.

CURETON, C., J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

