## LANG v. HENDERSON.
### No. 13927.

Court of Civil Appeals of Texas. Dallas.
May 21, 1948.

Rehearing Denied June 11, 1948.

S. S. Barbaria, of Dallas, for appellant.
Eades & Eades, of Dallas, for appellee.

BOND, Chief Justice.

This is a suit for personal injuries and personal property damage to appellant Glenn Lang, Jr., and his wife Margaret Lang, resulting from a fire at a two-story, eight-unit apartment house owned, managed and controlled by appellee Corenne Henderson. In the apartment occupied by appellant and his wife was a coil-type automatic gas water heater to furnish hot water to each of the apartments in the building. It was the only water heater in the building, its use was common to all tenants, and under appellee's control. Appellant and his wife occupied the premises from February 1, 1946 to December 20, 1946 under oral contract with appellee to supply all utilities, which included hot water facility. The fire was caused by ignition of escaping gas from defective condition of the water heater; and, we think, the evidence introduced by appellant would have entitled appellant to submission of issues on the question of the landlord's negligence in failing to safely repair the heater or provide another heater safe and sufficient for the joint use of all the apartments, to avoid incurring injuries.. Trial of the cause was had to a jury and at conclusion of appellant's testimony, the court peremptorily instructed a verdict in favor of defendant; accordingly entered judgment.

Where a landlord retains control of premises, as apartments, hotels and the like, and has access to appliances furnishing facilities in common to all tenants, invitees or guests, etc., and knows the defective condition of a portion of the demised premises under his control, it is his duty, in absence of contract to the contrary, to keep the premises in safe condition; and he is liable in a tort action for injuries occurring to such occupants resulting from his failure to keep the premises or utilities safe. However, "Proof being made that the tenant had actual knowledge of the dangerous condition of the premises, it is to be concluded primarily that he is not entitled to recovery, for very evidently he was in a better position than was the landlord to avert the injury." 27 Tex.Jur. p. 350, sec. 207; Pollack v. Perry Tex.Com.App., 235 S.W. 541, 543. Thus it is, if the negligence or laches of a tenant, invitee or guest, etc., causes or contributes to the cause of injury or damage to himself and property from want of suitable repairs or replacements, he cannot recover. He must use reasonable care and, certainly, some effort to prevent resulting damage to himself. Apprehension of danger by a tenant was considered by our Supreme Court in Pollack·v. Perry, supra, in which the court said: "The defect was open and obviously apparent. She considered it dangerous. She 'didn't notice that place,' nor did she 'pay any mind

to that' at the time the plank broke. These manifest a lack of care and attention on her part, amounting to contributory negligence barring recovery." (Citing authorities.) The law does not require a landlord to take better care of a tenant than the tenant would take of himself. So where a tenant knows, as here, of the dangerous condition of the premises for a sufficient period of time, and continues to remain as tenant and use the premises with such defective and dangerous appliances, without showing freedom from responsibility, a recovery for damages is not sustainable against the landlord even though the landlord was negligent in respect to the dangerous instrumentality causing the damage or injury, or had previously promised to make repair and failed to do so. Baermann v. Bradix, Tex.Civ.App., 5 S.W.2d 869. Even though it be the duty of a landlord to keep in reasonably safe condition the portions of his premises under his control for common use of his tenants, the right of the tenant to recover for injuries may be barred by reason of Contributory negligence.]

Appellant's testimony is, in effect, that he was a tenant of appellee, the rental contract providing that he was to pay $7.50 per week for the apartment he and his wife occupied, with utilities, including hot water, furnished. The facility for furnishing hot water was an automatic coil-type gas heater located in appellant's kitchen and used in common by all tenants of the eight units. The fire originated at the water heater, spread over the apartment, causing the damages sought in this suit. There was no express contract or covenant on the part of appellee to repair the heater or to keep same in repair. However, appellee did retain a key to appellant's apartment, had access to the water heater, exercised supervisory control over the same, made repairs thereon and caused repairs to be made by others. The heater was not specifically included in appellant's lease contract, other than furnishing of hot water; and appellant exercised no special control over the heater. It was in common use by all the tenants to furnish hot water to their respective apartments.

The fire in question occurred on the morning of December 20, 1946. Appellant testified that he first reported the smell of escaping gas from the heater to appellee some six or eight weeks prior to the fire, and some two weeks prior thereto had notified appellee, as well as having notified the gas company's agent of the escaping gas; and, at that time, the gas people came and turned the gas off from the heater, and when he notified appellee of that fact, she said: "You kids have certainly fixed me." Soon thereafter, under revealed circumstances, the gas was turned back on by appellee, but the escaping gas was not checked. In response to questions, appellant answered as follows:

"Q. Mr. Lang, I will ask you did anything else happen in connection with that water heater following the occasion in which those matters were stated by the defendant? A. Well, she didn't even have a man to come out and fix it.

"Q. How many days before the fire was this? A. Well, the fire happened on December 20 and this was about December 4th.

"Q. All right; nothing then happened regarding the water heater between December 4 and December 20? A. Not that I know of.

"Q. During that time did you continue to smell gas in your apartment? A. Yes.

"Q. Did you complain about it during the time between December 4 and December 20? A. Yes. * * *

"Q. Did you report to the defendant personally about the condition of that water heater any other time than the 4th? A. Yes. * * *

"Q. Do you remember what she told you in response? A. She didn't say anything about it. She said she would see about it, just like she always did.

"Q. Did she see about it then? A. No, she didn't.

"Q. Between that date and the date of the fire did anybody to your knowledge come around there and do any work on that water heater? A. No. No one done

any work on that water heater except her, that I know of.

"Q. She did some work on it? A. Yes. * * *

"Q. Mr. Lang, did you report the condition of that water heater to Mrs. Henderson at any other time than this time you just related about? A. No, I didn't. * * *

"Q. Do you remember whether or not, Mr. Lang, on the night of the 19th you could smell gas in that apartment? A. Yes, you could, very definitely.

"Q. And did you do anything to relieve that condition? A. No, I didn't.

"Q. Do you sleep with the windows open or closed in your apartment? A. We slept with the doors closed between the kitchen and our bedroom, and we left a window crack so the gas could get out. * * *

"Q. Mr. Lang, going back for a minute, on the occasion of your smelling gas in room in your efficiency apartment, did you follow the gas? Did you trace it? A. Well, you could smell it. You could tell where it was, where it started. * * *

"Q. Was the smell of the gas any worse immediately prior to the occasion of the fire than it was a month and a half before the fire? A. Three or four days you could hardly stand it in there. The fumes hurt your eyes so bad that whenever you stood up in the room your eyes would water.

"Q. Three or four days? A. Three or four days prior to the fire."

Mrs. Lang, wife of appellant, gave pretty much the same testimony as did her husband, supplemented slightly to the effect that she told her husband about two or three weeks before the fire that he would have to report the escaping gas to Mrs. Henderson; that she (Mrs. Lang) couldn't stand it; that she was deathly afraid of it.

■ Evidently appellant and his wife knew that the water heater was out of repair, and that the escaping gas therefrom was calculated to make the heater a dangerous instrumentality to cause injury and damage. But for more than three weeks before the fire they did nothing to escape responsibility for their negligence or laches in failing to use reasonable care to prevent injury and damage, amounting to contributory negligence barring recovery. The duty of foreseeing injury from such known defects and dangerous gas appliances as disclosed from this record is the extent imposed by law upon appellant. Such, we think, failed to justify a submission of the case to the jury, and the action of the trial court in peremptorily instructing verdict for the defendant should be sustained. It will be so ordered.

LOONEY, Justice (dissenting).

The statement in the majority opinion by Mr. Bond, Chief Justice, is ample for an understanding of the nature of the case. I am in accord with the majority in saying "The fire was caused by ignition of escaping gas from defective condition of the water heater; and, we think, the evidence introduced by appellant would have entitled appellant to submission of issues on the question of the landlord's negligence in failing to safely repair the heater or provide another heater safe and sufficient for the joint use of all the apartments, to avoid incurring injuries."

However, I respectfully dissent from the holding of the majority to the effect that under all the facts and circumstances appellant was guilty of contributory negligence as a matter of law and that the trial court did not err in directing the verdict in favor of appellee.

In the first place, I do not think the contributory negligence imputed to appellant in the majority opinion finds any basis in the pleading. The plea of contributory negligence seems to have been based altogether on the alleged failure of the appellant to discharge certain duties incumbent upon him; the plea in its entirety reading as follows: "That the plaintiff was guilty of contributory negligence in the following respects: (1) Plaintiff failed to inspect said water heater. (2) Plaintiff failed to have said water heater repaired. (3) Plaintiff attempted to repair said water heater himself knowing that he was unskilled in such matters, and repaired such heater in an improper manner. (4) Plaintiff failed to keep said water heater in a safe state of repair when he knew that same was

operating in a defective condition. (5) Plaintiff failed to keep said water heater free from escaping gas. (6) Plaintiff failed to exercise ordinary care to discover that said water heater was operating in a safe condition. (7) Plaintiff failed to turn off the gas, knowing that the water heater was operating in a defective condition. (8) Plaintiff failed to report to the owner of the building that said heater was defective. Each of the acts of negligence above alleged was a direct and proximate cause of the fire and the alleged damages to plaintiff's property and plaintiff's wife, and such acts contributed to said fire and said damages."

The record fails to disclose any evidence showing that it was appellant's duty to do either of the things he is charged with having failed to do. Certainly he was not authorized to turn the gas off and thus deprive the tenants in the other units of the building. Besides, the evidence shows that appellant repeatedly reported to the owner of the building the defect in the heater.

The majority, in my opinion, did not convict appellant under either of the counts in the plea of contributory negligence as heretofore set out, and as the contributory negligence plead by appellee was not sustained by evidence, I think the majority erred in holding as it did that appellant was guilty as a matter of law.

But even if the plea of contributory negligence was sufficient to admit the evidence quoted in the opinion and acted upon by the majority in reaching their conclusion, yet I am of opinion that the evidence raised an issue of fact that should have been submitted to the jury. Appellant and wife were young people, he was discharged from the Armed Services of the Government about the time his wife rented the premises in question, February 1, 1946; had entered Southern Methodist University, gave half time to his student duties, the other half to an employment he had obtained. About six weeks before the fire, he and wife began to smell the fumes of escaping gas, which continued during the period mentioned, becoming probably more offensive and intense immediately preceding the fire.

The majority opinion cites Pollack v. Perry, Tex.Com.App., 235 S.W. 541 and Baermann v. Bradix, Tex.Civ.App., 5 S.W. 2d 869, and applied the rule of law announced in those cases to the instant case, concluding that appellant was guilty of contributory negligence as a matter of law. Those cases, in my opinion, are only remotely in point; there is a radical difference in the facts. The two cases cited are practically identical; each was an action for damages by a tenant against the landlord to recover for injuries resulting from rotten planks in the floor of the rented premises. In those cases the tenant continued to use the premises, although the existence of the defect in the floor was well known and had been known to exist for some time; was in no sense hidden or mysterious, but perfectly open and obvious. Not so, however, in regard to the instant case. It is true that escaping gas was detected for at least six weeks or two months before the fire, but appellant is not suing for damages resulting from being subjected to the odors of escaping gas, but is asking damages resulting from a fire occurring at about 2:30 A. M., from gas that, obviously, had escaped and was confined in such volume as to become ignited in some manner not disclosed by the record. I do not think it can be reasonably or correctly said that a fire such as occurred resulting from escaping gas, was as probable as injury from the continued use of a defective floor, the existence of which being well known to the party injured.

Gas is a fluid, invisible, shapeless, and behaves somewhat mysteriously, as was said of the wind on a memorable occasion, that "The wind bloweth where it listeth, and thou hearest the sound thereof, but canst not tell whence it cometh, and whither it goeth."

In order to justly and fairly appraise appellant's conduct, I think, as nearly as possible, we should place ourselves in his shoes and look with open eyes upon the situation as he was compelled to do. Under the facts and circumstances, should appellant, in the exercise of reasonable care for the safety of himself and wife, have visualized that what did happen would likely

happen and that he was guilty of contributory negligence as a matter of law by remaining on the premises? Or rather should it not be said that he was reasonably prudent in what he did and, in view of the housing shortage, the condition of his wife —advanced six months in pregnancy, and the late December weather outside, was justified in remaining on the premises, bearing the ills he had, rather than flying to those he knew not of? This situation, in my opinion, presented essentially a question of fact and not of law.

Again, I think that a question of fact was raised which should have gone to the jury for decision, as the record discloses that after appellant began to smell escaping gas, from six weeks to two months before the fire, he immediately and repeatedly notified his landlord, the appellee, of the fact and she usually said she would give it attention or would look after it; and on one occasion, becoming impatient with her failure to have the leak repaired, appellant called the gas company and it sent a man down who cut the gas off. When appellee found out this fact, she mildly rebuked appellant, saying "You kids have certainly fixed me." And then it seems she undertook to repair the defect herself. Can it be said that this was not the exercise of some care by appellant for the safety of himself and wife? I do not think so. And if it was the exercise of any degree of care, a question of fact was presented for the jury. We had that identical question before us in the case of Henwood v. Gilliam, Tex.Civ.App., 207 S.W.2d 904 (writ refused.) We held that where the evidence showed plaintiff had knowledge of or was chargeable with knowledge of the danger, but exercised some care, contributory negligence was a question of fact for the jury. In applying this rule, it should be borne in mind that the law does not prescribe any particular acts or omissions as constituting ordinary care, or its absence. Some may think that appellant should have notified the landlord oftener, or should have done something else, but the question for the jury would remain; that is, whether in what he did do he acted as a reasonably prudent person would have done under the same or similar circumstances. In the case

mentioned, authorities were cited at length on the subject and will be found in the opinion on rehearing, 207 S.W.2d at pages 910, 911.

For the reasons heretofore set out, I think the trial court erred in taking the case from the jury and instructing a verdict, that the majority erred in holding that appellant was guilty of contributory negligence and that the trial court did not err in instructing a verdict and rendering judgment for the appellee. I am of opinion, therefore, that appellant's motion for rehearing should be granted, the judgment of this Court set aside, and that the case should be reversed and remanded to the trial court for further proceedings.