Sarah CROWELL, Appellant
(Defendant Below),

v.

Russell SEPTER and Loretta Septer,
Appellees (Plaintiffs Below).

No. 3–481A93.

Court of Appeals of Indiana,
Third District.

April 6, 1982.

Rehearing Denied May 25, 1982.

William N. Mills, Mills & Northrop, Huntington, for appellant.

Douglas C. Lehman, Johnston, Lehman & Guenin, Wabash, for appellees.

HOFFMAN, Presiding Judge.

Sarah Crowell appeals the summary judgment granted in favor of Russell and Loretta Septer on Crowell's counterclaim for damages she sustained in a fall. The dispositive issue concerns agreements between Crowell and the Septers regarding repair of a leaky roof.

The Septers, in June 1978, initiated an action for the eviction of Crowell from a house leased to her by the Septers. Crowell filed a counterclaim asking for the recovery of damages sustained in a fall that occurred in the leased premises. Crowell apparently slipped in a pool of water which had accumulated as a result of a leaky roof.

Crowell argues that the Septers repeatedly promised to either repair the roof or furnish the materials in order that members of Crowell's family could repair the roof. Crowell contends that she relied on these promises and continued the leasing arrangement. Crowell argues that this reliance constituted consideration for the Septers' promises regarding the roof and that their breach of the contract resulted in her injuries.

It is necessary to place Crowell's arguments in the proper perspective. The law in Indiana, dating back to the 19th

century, requires a tenant, in certain instances, to mitigate his damages by making his own repairs despite a duty on the part of the landlord to make repairs. In *Hamilton et al., Executors v. Feary* (1893), 8 Ind.App. 615, 35 N.E. 48, a tenant sued her landlord for injuries she sustained when the ground around an incomplete cistern gave way and the tenant fell into the hole. The evidence showed that the landlord had entered into a contract with the tenant to complete the cistern, but later refused to do so. This Court stated:

"It was said, in the case of *Hendry v. Squier, supra* [126 Ind. 19, 25 N.E. 830]: 'As shown by the averments in the pleading, the condition of this roof was well known to the appellant long before the time when the landlord was to repair it by putting on a new roof. And it is further averred that the appellant requested the repairs to be made, and the appellees refused to make the repairs. This gave the appellant the right to make the necessary repairs and charge them to appellees. *Hopkins v. Ratliff*, 115 Ind. 213 [17 N.E. 288]. Certainly, after such refusal appellant could not voluntarily permit his goods to remain in the building and suffer injury, and recover the damage from the appellees. Yet, under these circumstances, the appellant allows his goods to remain in this end of the building, and be damaged by the rainfall, when, for aught that appears in the pleading, it would have been a small expense to have repaired it, or that even a new roof upon the building would have cost much less than the damages sustained to the goods.'

"In this particular the case at bar does not differ materially from the case cited. In both cases the pleading showed that the landlord had, long before the injury, refused to make the repairs. Where this is the case it would seem to be fruitless for the tenant longer to rely upon the landlord's promise. He would have the right to make the necessary repairs himself and charge their cost to the landlord. Under the principle that it is his duty to reduce the damages as much as reason-

ably lies in his power to do so, he could not be permitted to allow the defect in the premises to remain, being himself fully cognizant of the same, and then sue for the accident resulting from the dangerous condition of the property.

"The case under consideration can not be distinguished from the one cited by saying that in the latter case the tenant might have removed his goods to another part of the building. The court does not base its conclusion upon this fact. It holds that under such circumstances his remedy was to make the repairs and charge them to the landlord. This ruling does not conflict with the cases which decide that the tenant, instead of making such repairs himself, might recover in damages the diminution of the value of the rent during the time the premises remain out of repair. While in such cases the landlord is clearly guilty of a violation of his contract, the tenant can not remain inactive and allow special damages to accrue, and recover them from the landlord, when, at slight expense, he might have averted the injurious consequences complained of.

"The principle adverted to applies not only to breaches of contracts, but to torts as well. 'In case of wrongful injury to person or property, the injured party is required to use reasonable exertion to lessen or moderate the resulting damage.' 1 Suth.Dam., section 90, and cases cited in second edition." 8 Ind.App. at 622–624, 35 N.E. at 50–51.

A tenant's duty to mitigate damages was also discussed in *Guynn v. Tremont Hotel Co.* (1921), 75 Ind.App. 647, 129 N.E. 336, wherein the Court stated:

"In *Hendry v. Squier* (1890), 126 Ind. 19, 25 N.E. 830, the action was for rent due and unpaid, in which action the tenant filed a counter-claim for damages to goods because of a leaky roof. As in the instant case, the tenant knew of the leaky condition, but failed to make repair, and permitted his goods to remain in the building until damaged. The court held that it would be manifestly unjust to hold

that even where a landlord had contracted to make all necessary repairs, the tenant might permit his goods to so remain beneath a leak in the roof which it would cost but a trifle to repair, and which, if left out of repair, would cause large damage to his goods, and subject the landlord to the payment of such damages.

"In *Hamilton v. Feary* (1894), 8 Ind.App. 615, 52 Am.St. 485, 35 N.E. 48, after citing and discussing the case of *Hendry v. Squier, supra,* and other cases, the court says on p. 623, 'Under the principle that it is his duty to reduce the damages as much as reasonably lies in his power to do so, he could not be permitted to allow the defect in the premises to remain, being himself fully cognizant of the same, and then sue for the accident resulting from the dangerous condition of the property.'

"In *Rose v. Butler* (1893), 69 Hun. 140, 23 N.Y.Supp. 375, it was held that in an action against a landlord for breach of a covenant to repair, whereby plaintiff's water-color designs were damaged by rain, and where plaintiffs knew of the condition of the roof and left their designs in a place where they had reason to believe that the rain would beat in during a storm, they could not recover for the loss.

"In *Reiner v. Jones* (1899), 38 App.Div. 441, 56 N.Y.Supp. 423, it was held that a landlord's breach of his covenant to repair the roof of the demised premises does not authorize the tenant to recover for injury inflicted on his goods by the weather, he knowing for months of the leaky condition of the roof.

"In *Weinberg v. Ely* (1906), 114 App.Div. 857, 100 N.Y.Supp. 283, a lease provided that if the building should be damaged by fire repairs should be made at the landlord's expense. A fire occurred and destroyed the roof. The landlord was notified at once, but neither he nor the tenant made any repairs. Six days later, a heavy rain damaged the tenant's goods. It was held that the landlord was not liable therefor, as it was the tenant's duty to protect his goods or make repairs himself, at the landlord's expense. Other authorities to the same effect are *Klausner v. Herter* (1901), 36 Misc.Rep. 869, 74 N.Y.Supp. 924. *Margolius v. Muldberg* (1904), (Sup.) 88 N.Y.Supp. 1048. *Cantrell v. Fowler* (1889), 32 S.C. 589, 10 S.E. 934. *Gavan v. Norcross* (1903), 117 Ga. 356, 43 S.E. 771." 75 Ind.App. at 648–650, 129 N.E. at 337.

■ The tenant's responsibility was succinctly stated in *Olinger v. Reahard* (1947), 117 Ind.App. 172, 70 N.E.2d 436 as follows:

"It appears from the record that appellee had knowledge of the state of disrepair of the roof. For all the evidence discloses the cost of putting it in repair would have been small. Under such circumstances appellee was entitled to make the repairs and offset the cost against any rent due for the premises; but he could not merely continue his occupancy, suffer damage and charge his landlord therewith. *Hendry v. Squier* (1890), 126 Ind. 19, 25 N.E. 830; *Guynn v. Tremont Hotel Co.* (1921), 75 Ind.App. 647, 129 N.E. 336." *Id.* at 174, 70 N.E.2d at 436. *See also Sigsbee v. Swathwood* (1981), Ind.App., 419 N.E.2d 789; *Raco Corporation v. Acme-Goodrich, etc.* (1955), 126 Ind.App. 168, 126 N.E.2d 262.

A landlord therefore is not necessarily liable for damages resulting from his failure to repair despite the fact that he contracted to make repairs. One exception to this general rule was stated in *Hamilton et al., Executors v. Feary, supra,* as the situation in which "the landlord has covenanted to make repairs, and upon being notified has repeatedly promised and led the tenant to believe in good faith that he will make them." 8 Ind.App. at 625, 35 N.E. at 51.

■ Among the trial court's findings are the following:

"*The only terms of the lease* were that the defendant, Sarah Crowell, was to pay Twenty-five Dollars ($25.00) per week to the plaintiffs as rent and the defendant was to pay her own gas bill.

\*　　\*　　\*　　\*　　\*　　\*

806

"*On more than one occasion after the inception of the lease* and discovery of the leaks and prior to March 1, 1978, discussions were held between the plaintiffs and the defendant or relatives of the defendant concerning the repair of the flat roof over the kitchen. In at least one of these discussions, relatives offered to repair the flat roof over the kitchen if the plaintiffs supplied the material. In other conversations, the plaintiffs stated with respects to these said leaks that 'I've got to fix that', or 'we're going to get it fixed,' or made other statements to have the roof repaired.

"Nothing of value was exchanged at the time the statements were made as consideration for repairing the roof; no material was supplied for the repair of the roof; the defendant, with knowledge of the leaks in the roof over the kitchen, continued to reside in the premises and pay the rent until the end of March, 1978; and no repairs were ever made to the roof by either the plaintiffs or the defendant until after the defendant quit the premises in late March, 1978." (Emphasis added.)

The findings of the trial court indicate the existence of one lease and discussions concerning the roof occurring after the inception of the lease. The terms clearly show however that Crowell had a week-to-week tenancy and as such a new tenancy, with a new oral lease, was entered into every week. Under these circumstances, it becomes a genuine issue of material fact as to whether the Septers' promises became incorporated in any of the subsequent oral leases. Additionally, if these promises did become a part of the leases, it must be determined if the Septers "repeatedly promised and led the tenant to believe in good faith" that the repairs would be made.

The trial court also made the following findings:

"The leased premises consisted of a kitchen and bedroom under a flat roof at the rear of the premises, a living room, bedroom and bathroom under a peaked roof at the front of the premises, and a hallway which ran under the peaked roof and ended at the kitchen which was under the flat roof.

"The flat roof leaked in at least two places in the kitchen which leaks were open, patent and obvious and known by the defendant who told the plaintiffs about said leaks. The plaintiffs had no reason to know of the leaks in the flat roof prior to being told of them by the defendant, and, in fact, did not know of the said leaks prior to being told of them by the defendant.

"There had never been any leaks in the roof above the hallway until the early morning of March 1, 1978, and prior to that time neither the plaintiffs nor the defendant had knowledge of any leaks in the roof over the hallway."

The accident occurred in the hallway below the peaked roof. The trial court failed to make any findings as to whether the water in the hallway could have been caused by the defects in the flat roof. Causation becomes a genuine issue of material fact if the Septers could be found liable for injuries sustained as a result of leaks in the flat roof.

Summary judgment is proper only when there is no genuine issue of material fact. Ind.Rules of Procedure, Trial Rule 56(C). Where there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved against the party moving for the summary judgment. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448. In light of the issues of material fact present in this case, the judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.

Reversed and remanded.

GARRARD and STATON, JJ., concur.