GLENN LANG, JR., V. CORENNE HENDERSON.

No. A-1832. Decided December 1, 1948.
Rehearing overruled December 31, 1948.
(215 S. W., 2d Series, 585.)

*S. S. Barbaria* and *Henry D. Akin,* both of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the trial court correctly directed a verdict in favor of the defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law in continuing to remain in the premises as a tenant after he knew the hot water heater was giving off fumes. McAfee v. Travis Gas Corp., 137 Texas 314, 153 S.W.(2d) 442; Henwood v. Gilliam, 207 S.W. (2d) 904; Temple Electric Light Co. v. Halliburton, 136 S. W. 584; Id. 104 Texas 493, 140 S. W. 426.

*Eades & Eades* and *Eric Eades, Jr.*, of Dallas, for respondent.

Mr. JUSTICE SMEDLEY delivered the opinion of the Court.

Petitioner, tenant, sued respondent, landlord for damages on account of injuries suffered by petitioner's wife and loss of personal property as the result of a fire in the rented premises, a small apartment in the City of Dallas. The fire was caused by a defective gas water heater. After petitioner introduced his evidence and rested the district court granted respondent's motion for an instructed verdict. The Court of Civil Appeals affirmed the trial court's judgment, holding that petitioner was guilty of contributory negligence as a matter of law. Associate Justice Looney, dissenting, expressed the opinion that on the issue of contributory negligence a question of fact was raised that should have been submitted to the jury. 211 S. W. (2d) 972.

Petitioner and his wife occupied the apartment of three rooms, bedroom, kitchen and bathroom, from February 23, 1946, until December 20, 1946, when the fire occurred. They paid $7.50 a week as rent, with all utilities furnished including lights, gas and water. One heater supplied hot water for all of the eight aparaments in the building. The heater was in a closet or alcove about three feet wide and four feet deep in the kitchen of petitioner's apartment, with lattice work in front of the alcove. There was one entrance to the apartment into the bedroom and a door between the bedroom and the kitchen.. Respondent listed the apartments with OPA as utility apartments, agreeing for a stipulated rental to furnish all utilities, including hot water. She had access to the water heater, having retained a key to petitioner's apartment.

Petitioner and his wife first smelled gas escaping from the heater about a month and a half or two months before the fire occurred. They immediately reported the fact to respondent, who promised to have a man come to inspect and repair the heater. She did not do so. Some time later they again requested her to repair the heater; again she promised and again she failed to perform the promise. Thereafter, about December 4, petitioner's wife called the gas company. They sent a man who cut the gas off from the heater. On the same day, however, the gas was turned on again; by whom neither petitioner nor his wife knew. After the gas had been cut off respondent came to the apartment, took down the lattice work, inspected the heater and said to petitioner's wife: "It is only fumes, that can be fixed". And said further; "You kids have certainly fixed me". She

promised she would return in a short time. Petitioner's wife went to town, leaving a note to tell respondent she had left the door unlocked so that a plumber could come in to repair the heater. When she returned she found two or three of her cooking utensils in the sink smudged with smut, fingerprints on the woodwork, and traces of soot and water on the linoleum. She did not see respondent again until after the fire. Gas or gas fumes continued to come from the heater, and petitioner again complained to respondent on about December 10. Respondent said she would see about it, but she did not. Petitioner and his wife slept with the door closed between the bedroom and the kitchen and left the window in the kitchen up so that gas could escape. The fumes from the gas were worse for three or four days before the fire than they were when petitioner first noticed them a month and a half earlier.

On the early morning of December 20 petitioner and his wife were awakened by fire in the kitchen and found that the corner of the kitchen where the heater was located was ablaze. The evidence shows or tends clearly to show that the fire was caused by the defective water heater.

The majority opinion of the Court of Civil Appeals sets out a great part of the testimony, and in holding that petitioner is barred from recovery by reason of contributory negeligence established by the evidence as a matter of law, thus states its conclusion:

"The law does not require a landlord to take better care of a tenant than the tenant would take of himself. So where a tenant knows, as here, of the dangerous condition of the premises for a sufficient period of time, and continues to remain as tenant and use the premises with such defective and dangerous appliances, without showing freedom from responsibility, a recovery for damages is not sustainable against the landlord even though the landlord was negligent in respect to the dangerous instrumentality causing the damage or injury, or had previously promised to make repair and failed to do so."

Associate Justice Looney dissented from the opinion of the majority of the Court of Civil Appeals on two grounds: first, that the majority did not convict petitioner of the contributory negligence alleged in respondent's answer; second, that even if the evidence acted upon by the majority in reaching their conclusion conformed to the plea of contributory negligence, the evidence raised an issue of fact that should have been submitted

to the jury. We need not consider the question as to the sufficiency of the pleading, because after careful consideration of the evidence which has been set out above, and of the entire statement of facts, we are in agreement with the dissenting opinion that an issue of fact was presented.

■■ It is elementary that the question of contributory negligence is generally, by reason of the very nature of the defense, one of fact for the jury to decide. Gulf, Colorado, etc. Ry. Co. v. Gasscamp, 69 Texas 545, 7 S. W. 227; Temple Electric Light Company v. Halliburton, 104 Texas 493, 140 S. W. 426, 136 S. W. 584; McAfee v. Travis Gas Corporation, 137 Texas 314, 153 S. W. (2d) 422. According to the authorities above cited and many others, "in order that an act shall be deemed negligenct per se, it must have been done contrary to a statutory duty, or *it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it.*" (Emphasis added). Gulf, Colorado, etc. Ry. Co. v. Gasscamp, supra. Stating the rule in another way, the court can withdraw the question of contributory negeligence of the plaintiff from the jury and determine it as a question of law only when from the facts in evidence but one rational inference can be drawn. 38 American Jurisprudence, p. 1054, Sec. 348. It has been said that contributory negligence is a question of fact for the jury when the evidence shows that the plaintiff, with knowledge or chargeable with knowledge of the danger, exercised some care. Henwood v. Gillam, 207 S. W. (2d) 904, application for writ of error refused.

■ Respondent argues that petitioner was negligent in failing to repair the heater, while the majority opinion of the Court of Civil Appeals seems to hold that he was negligent in remaining in the apartment as tenant. In our opinion reasonable minds may differ as to both of these questions. The obligation to repair the heater rested upon respondent. Several times she was notified of the need of repairs and she continued to promise to make them until as late as December 10, ten days before the fire. When the gas company called by petitioner cut the gas off from the heater respondent complained, evidently because the tenants in her other apartments were deprived of the hot water which she had agreed to supply to them. The heater was a large one serving all of the eight apartments and, as has been said, respondent had retained a key to petitioner's apartment so that she could exercise control over the heater. In view of these facts

in evidence it should not be concluded as a matter of law that a person of ordinary prudence in petitioner's position would have undertaken to make the repairs.

We cannot be certain that a reasonably prudent person under the circumstances in evidence would have moved from the apartment. Petitioner was employed only half time because he was attending school. His wife was advanced six and a half months in pregnancy. The time of the year was late December. We may take judicial notice of the acute housing shortage then existing, as a fact of common knowledge. Respondent had repeatedly promised to make the repairs.

Petitioner and his wife exercised at least some care for their safety. Several times they reported the defective condition of the heater to respondent. They called the gas company. They slept with the door closed between their bedroom and the kitchen, and left the kitchen window up so that gas fumes or gas could escape. The evidence does not conclusively show that enough gas was escaping to cause petitioner and his wife reasonably to anticipate the occurrence of a fire.

Respondent cites Pollack v. Perry, (Com. App.) 235 S. W. 541, as directly in point. That decision, like all cases in which this question is presented, rests upon its peculiar facts. The testimony of the plaintiff in that case showed that she used no care whatever to avoid stepping on a plank in the floor that she well knew was sunken and swaying.

By counter point respondent presents the contention that she owed no duty to repair the heater. The Court of Civil Appeals correctly disposed of this contention by its holding that the evidence introduced by petitioner "would have entitled appellant to submission of issues on the question of the landlord's negligence in failing to repair the heater or provide another heater safe and sufficient for the joint use of all the apartments." The evidence brings the case within the rule that when a landlord has leased the premises to several tenants, retaining possession or control of a part for their common use, he becomes liable to a tenant who suffers injury due to the defective condition of that portion. O'Connor v. Andrews, 81 Texas 28, 33, 16 S.W. 628; 32 American Jurisprudence, pp. 561-563, Sec. 688; 6 Texas Law Review, pp. 390-392.

The judgments of the Court of Civil Appeals and the district court are reversed and the cause is remanded to the district court.

Opinion delivered December 1, 1948.

Rehearing overruled December 31, 1948.