ICE SERVICE COMPANY et al., Appellants,

v.

Finch E. SCRUGGS et al., Appellees.

No. 15646.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 21, 1955.

Rehearing Denied Nov. 25, 1955.

Nelson & Sherrod, and Stanley Kirk, and Eugene Sherrod, Jr., Wichita Falls, for appellants.

C. Coit Mock, Wichita Falls, for appellees.

MASSEY, Chief Justice.

From a judgment for the plaintiff in a slip-and-fall case, the defendants appealed. The defendants were not the proprietors of the premises, but were the actors who deposited the substance upon which the plaintiff slipped, causing his fall.

Judgment affirmed.

Finch E. Scruggs was employed in a cafeteria operated by and located upon the premises of Sheppard Air Force Base near Wichita Falls, Texas. He was covered by Workmen's Compensation insurance through the Employers Mutual Liability Insurance Company of Wisconsin, which Company had paid to him the sum of $5,000 in settlement of his claim for compensation because of injuries sustained while working in the cafeteria on or about August 25, 1952. Subsequently, Scruggs recovered a $6,500 judgment of the defendants (appellants here) on account of his common-law damages sustained as result of these same injuries. The compensation insurer was awarded the $5,000 it had paid plaintiff Scruggs, through its subrogation rights, and the remainder was awarded to the plaintiff. The injuries, because of which the compensation was paid, and by reason of which Scruggs sought damages against the defendants, were received as the result of his having fallen when he slipped on water deposited through the melting of particles of ice, at a time when he was on the cafeteria premises. The defendants, sued by Scruggs for common-law damages, were the Ice Service Company, a corporation, and its employee, Theodore L. Fithian. The Ice Service Company manufactured and marketed ice and Fithian was the iceman who transported the ice by truck to the Company's patrons, among whom was numbered the employer of the plaintiff. Both defendants are appellants here.

Upon the occasion in question, Fithian arrived at the dock of the cafeteria with his truckload of ice, received instruction from the plaintiff upon the matter of the amount of crushed ice desired to be delivered, ground the amount desired in the "grinder" attached to the truck, and manually transported the crushed ice by a canvas carrying bag into the premises of the cafeteria where he deposited some in the part of the serving counter from which salads were dispensed and some in the part of the serving counter from which milk was dispensed. He made one or more trips with ice in his canvas carrying bag, passing by some heavy weighing scales en route. The path traversed was along a route where the floor had shortly prior thereto been inspected and found clear and free of ice or water.

No other person had occasion to or did transport crushed ice or ice in any other form in the vicinity of the weighing scales between the time of the inspection and the time the plaintiff fell some fifteen to thirty minutes thereafter as a result of slipping on a pool formed from melted ice particles. At the time of the plaintiff's fall there were partially melted ice particles in the immediate vicinity of the spot which caused the plaintiff's fall. Plaintiff was either walking rapidly or "trotting" at the time of his fall, as he was hurrying to answer the telephone.

In falling, the plaintiff struck his back upon a part of the weighing scales, occasioning his injuries. Plaintiff worked throughout that day, but went to see a doctor in the afternoon. He continued to work at the cafeteria until September 30, 1952. About a month later, plaintiff underwent hospitalized treatment.

Only one iceman visited the premises on the particular morning in question, and there was direct testimony to the facts set out above, but no direct testimony that on this particular morning ice particles spilled from the canvas carrying bag. Therefore, the evidence connecting the plaintiff's fall and resulting injury with the defendants was circumstantial in character. In this lies the premise for the appellants' first three points. It is contended that there was either no evidence whatever, no evidence of probative force, or insufficient evidence to support any finding of primary negligence against the defendants, wherefore the trial court should have instructed a verdict in behalf of the appellants or rendered a judgment non obstante veredicto for them, as per the motions made in these respects at varying stages of the trial; or that this court should order a new trial because of the insufficiency of the evidence to support plaintiff's judgment.

■ These points of error are overruled. Under the points, the appellants contend that only by basing one presumption upon another might it be said that a case of primary negligence could have been established, since no one saw any ice fall from the bag being carried by Fithian, and since the only connection which could be made between the puddle of water which caused the plaintiff's fall and ice from Fithian's bag would be by the evidence to the effect that there were other adjacent puddles of water in which particles of ice were present. Appellants say that it is a presumption that the puddle in which the plaintiff slipped was caused by the melting of ice particles, and that it must be presumed that such particles fell from Fithian's carrying bag. While we recognize and acknowledge that the law prohibits the finding of negligence through a presumption based upon a presumption, we take occasion to point out that a presumption is something different and distinct from an inference which is within the particular province of a jury. In other words, " * * * a presumption is a rule which the law makes upon a given state of facts, while an inference is a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proved; * * *." 31 C.J.S., Evidence, § 115, p. 725, Classes of Presumptions and Distinctions—Distinguished from inference, sec. 115. See also Strain v. Martin, Tex.Civ.App.Eastland, 1944, 183 S.W.2d 246; Joske v. Irvine, 1898, 91 Tex. 574, 44 S.W. 1059; Norfolk Coca-Cola Bottling Works v. Krausse, 1934, 162 Va. 107, 173 S.E. 497; Erie R. Co. v. Murphy, 2 Cir., 1925, 9 F.2d 525; Neely v. Provident Life & Accident Ins. Co., 1936, 322 Pa. 417, 185 A. 784, 789.

■ The question is whether there is any evidence in the record from which the jury might have properly found negligence proximately causing the plaintiff to slip and fall. In the case of Houston E. & W. T. Ry. Co. v. Boone, 1912, 105 Tex. 188, 146 S.W. 533, 535, the court quoted with approval from Thompson's Commentaries on the Law of Negligence, vol. 6, sec. 7863, as follows: " ' * * * a verdict for negligence may be supported by inference; but such inference must be a logical, probable, and reasonable deduction from proved or conceded facts. Negligence cannot be a mere matter of conjecture, but must be fairly inferable from the evidence. This

principle permits the admission of circumstantial evidence to contradict positive and direct testimony given by eyewitnesses. It is not incumbent upon the plaintiff, after proving an accident which implies negligence, to show the particular negligence, when from the circumstances it is not in his power to do so.' "

Nor in this case should it be said that the presence of the substance on the floor which caused the plaintiff to slip and fall might be as well and properly attributed to the milkman who had passed the same way with his milk bottles, or from water which had run onto the spot from an icebox or other facility in the cafeteria. There was no proof that the milkman had any ice or water in the containers by which he carried his milk, and there was no proof of any rivulet of water as from an icebox, etc. The verdict for the plaintiff was clearly based upon an inference which was fairly drawn upon evidence free and distinct from speculation and conjecture inhibitive thereof.

By a third point, the appellants contend that plaintiff was guilty of contributory negligence as a matter of law. They have briefed the question upon a unique theory, to wit: that since in slip-and-fall cases the party in control of the premises on which an accident occurs has the duty of preventing the creation of any defective or dangerous condition likely to result in injury, or once created to correct the same promptly, etc., the plaintiff in this instance, being the manager of the cafeteria, should have stopped the iceman from carrying ice so heaped up in his carrying bag that ice was likely to be spilled thereform onto the floor of the premises, or if this not done should have inspected the premises promptly after the iceman delivered ice so as to ascertain if any ice had spilled onto the floor and cleaned it up so that no one would be likely to slip and fall by reason thereof. The plaintiff testified that the iceman would normally carry the crushed ice in his carrying bag "heaped up" so that "it would drop off the top of that (canvas) bag as he came through."

In order that an act or omission to act shall be deemed negligent as a matter of law, it must have been done or permitted contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that it could be said, without hesitation or doubt, that no careful person would have committed or permitted it. Stated in another way, the court can withdraw the question of contributory negligence of the plaintiff from the jury and determine it as a question of law only when from the facts in evidence but one rational inference can be drawn. See Lang v. Henderson, 1948, 147 Tex. 353, 215 S.W.2d 585, and cases and texts cited. See also the analysis of factual case situations in the consideration of the question in Triangle Motors of Dallas v. Richmond, 1953, 152 Tex. 354, 258 S.W.2d 60. Appellants' point is overruled since in the present instance the question of plaintiff's contributory negligence was a matter for the jury.

The tenth ground of appellants' motion for new trial reads as follows: "The Court erred in refusing the defendants' Special Requested Issues numbered one through twenty-three, inclusive, reference to which said Issues, as appear on file in this cause, is made for all purposes, as if fully quoted herein." Of these issues, five related to the question of whether the plaintiff was negligent in relation to maintaining the floor in a reasonably safe condition for persons to traverse, inclusive of the questions upon the fact and upon proximate cause;—three related to the inquiry as to whether the plaintiff failed to discover the wet condition of the floor before he fell, negligence therefrom and proximate cause;—three related to the inquiry as to whether the condition of the floor was open and obvious to the plaintiff, whether he ought to have known of such condition, and whether he voluntarily exposed himself thereto;—and two related to the question of whether the plaintiff was negligent in wearing the type shoes worn upon the occasion in question, and whether such was a proximate cause of his injury. The complaints of the refusal of these thirteen issues premise points five to

eight, inclusive, brought forward on the appeal. No complaint is made here on the refusal of the other ten specially requested issues.

■ Texas Rules of Civil Procedure, rule 321 provides that each ground of a motion for a new trial shall refer to that part of the ruling of the court, charge given to the jury, or charge refused in such way *as that the point of objection can be clearly identified and understood by the court.* In this case, appellants had a single ground in a motion for new trial complaining because twenty-three specially requested issues had been refused by the trial court. Not merely one subject of objection or matter of prejudice was involved, but certainly the appellants thought that they had cause to complain on more than the four matters covered by the above mentioned thirteen specially requested issues out of the twenty-three referred to in the motion for new trial. Furthermore, the tenth ground of the motion for new trial neither points out any defense which the appellants believe was denied them in the refusal of any issue, nor points out any particular form or kind of prejudice which resulted to them as the result of their refusal. In our opinion, the appellants' motion for new trial did not present the questions, nor any of them, in such a manner that the same might be clearly identified and understood by the trial court as required by T.R.C.P. 321, affording the trial court the first full and fair opportunity to correct its errors, if any, pointed out, or to grant a new trial if need be. For that reason, appellants are not entitled to raise them in the appellate courts. Meyer v. Great American Indemnity Co., Tex.1955, 279 S.W.2d 575; Texas Indemnity Ins. Co. v. Warner, Tex.Civ.App.Texarkana, 1942, 159 S.W.2d 173, writ refused, w. m.; Texas Life Ins. Co. v. Jordan, Tex.Civ.App., Fort Worth, 1952, 253 S.W.2d 906, error refused.

■ In connection with the preliminaries preparatory to actual jury trial, the plaintiff served Requests for Admissions upon both appellants, and answers thereto were made by the appellants approximately one month before the date of the trial. Upon the morning of the trial, and immediately before it began, appellants requested permission of the court to file an instrument denominated an Amended Answer to Plaintiff's Request for Admissions in substitution of their answers theretofore made. The only material change in the answers desired to be made was that of changing to an express denial the constructive admission (made through a failure to expressly deny the fact) that Theodore Fithian was the man who, in the course of his employment, delivered the ice on the morning of plaintiff's injury. A few days prior to the date of the trial, the appellants had taken the oral deposition of the plaintiff, at which time he testified that he thought that as of the date of his injury the first name of the iceman was Richard. The plaintiff's testimony in his deposition was further to the effect that the same man was delivering the ice all through the time from the date of his injury up until the time he ceased to work. Apparently the full impact of the possibilities attendant to the situation were not known to the appellants' attorneys until about the time they made the motion to amend their answers, when a check-up disclosed the fact that approximately six days after August 25, 1952, on which date plaintiff claimed to have sustained his injuries, a Mr. A. H. Richie got the contract to deliver ice to the cafeteria where the plaintiff worked, and he delivered ice to the cafeteria from about September 1, 1952, up until and past the date the plaintiff ceased to work. At the time appellants' request was presented on the morning of the trial, Theodore Fithian was not present and the evidence disclosed that he was in the State of Alabama. The trial judge was presented with a situation where the plaintiff could not proceed with the trial if leave was granted. Certainly this was true with Fithian absent from the forum, since the plaintiff could not point him out in a physical identification, and since plaintiff had obviously prepared for trial in reliance upon the constructive admission bearing upon Fithian's identification. The permission sought was denied and appellants contend that error resulted. They contend that the

refusal on the part of the trial judge amounted to an abuse of discretion and base their ninth and tenth points thereupon. We do not believe that in this instance there was any unreasonable exercise of judicial power and discretion in refusing leave to amend the answers to the requests for admission.

█ By their eleventh and twelfth points appellants complain of the refusal of the trial court to permit the president of the Ice Service Company to testify to the type of ice bag customarily used by ice companies and of the refusal of the court to permit them to introduce a letter from the Sheppard Air Force Base Headquarters with reference to requiring all ice delivered by appellant Ice Service Company to be in sealed containers. We believe that we may dispose of these points under authority of T.R.C.P. 434. Without discussing the arguments pro and con concerning the question of whether the evidence sought to be introduced was hearsay or otherwise incompetent in nature, we are convinced that even should the exclusion in these two respects be denominated as error committed in the course of the trial, the error would not be such as was reasonably calculated to cause and probably did cause the rendition of an improper verdict and judgment. See Commentaries under Rule 434, at page 276, Vernon's Annotated Texas Rules, and 31 Texas Law Review 8, et seq.

By their thirteenth point, the appellants contend that since in the answer to one issue the jury found that the slippery condition of the floor was the sole cause of the plaintiff's fall, while there was no issue or answer which inquired or found that the appellants either caused or contributed to cause the slippery condition of the floor, the finding as to sole cause was in fatal conflict with the findings that appellants allowed ice to fall upon the cafeteria floor on the occasion in question, which was negligence and a proximate cause of the plaintiff's injuries. There was a jury finding to the effect that the slippery condition of the floor (found by another answer to constitute the sole cause) was not caused to exist by the plaintiff or other employees of the cafeteria.

█ We do not believe that any fatal conflict exists. In the first place, the answers to the special issues made may be reconciled when considered in light of the pleadings, evidence and theories under which the parties, plaintiff and defendant, tried and submitted the case. In the second place, before the appellants would be entitled to a reversal on the ground of fatal conflict, they would be required to either show that they had obtained jury findings in their favor on every essential element of their defense, or their objection and saving of exceptions to the refusal of the court to submit the case to the jury in such a way as would have entitled them to a chance to secure such findings,—for to require a judgment entered on a verdict containing conflicting answers to be set aside the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it. The party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict, except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court entered. Little Rock Furniture Mfg. Co. v. Dunn, 1949, 148 Tex. 197, 222 S.W.2d 985.

Judgment is affirmed.