**Ezzie LYONS, Appellant,**

v.

**Kado PAUL et al., Appellees.**

No. 3595.

Court of Civil Appeals of Texas.

Waco.

Dec. 18, 1958.

Rehearing Denied March 26, 1959.

Bell & Singleton, Houston, for appellant.

Cain, Taylor & Cain, Liberty, Q. C. Taylor, Austin, for appellees.

TIREY, Justice.

This action is one for bill of review to set aside a default judgment. Appellees seasonably filed their motion for summary judgment, which motion was answered by appellant, and upon hearing of the motion for summary judgment the court granted such motion and decreed accordingly. In the judgment we find this recital: " * * * and it further appearing to the Court that this proceeding is a Bill of Review filed by Plaintiff Ezzie Lyons requesting the Court to set aside and hold for naught a Default Judgment previously rendered in Cause No. 16,495, and, in the alternative to hold that said Judgment is completely null and void, and that a retrial be had in said Cause No. 16,495, it further appearing to the Court that in open court on the hearing of Defendant's said Motion for Judgment, counsel for Plaintiff and Defendants stipulated as follows: 'For the purpose of this hearing, it is stipulated that Defendant Ezzie Lyons had a meritorious defense to the Plaintiffs' cause of action in the original suit; * * *' "

Plaintiff seasonably perfected her appeal to the Beaumont Court and the cause is here on transfer.

The judgment is assailed on what appellant designates as five points. They are substantially to the effect that the court erred (1) because the undisputed facts show that appellant answered in the trespass to try title suit and therefore no default judgment could have been entered therein against her; (2) because under the undisputed facts the actions of appellees' attorney in connection with the trespass to try title suit constituted fraud and thereby vacated the default judgment as a matter of law; (3) because there are material issues of fact to be submitted to the jury as to whether or not appellant was prevented from asserting her meritorious defense to the trespass to try title suit through the extrinsic fraud of appellees' attorney and through no fault of her own; (4) because the summary judgment wrongfully denied appellant the right to assert her meritorious defense to the trespass to try title suit and thereby deprived her of her property without due process of law and denied her equal protection of the laws, all in violation of appellant's rights under Art. 1, Sec. 19, Constitution of the State of Texas, Vernon's Ann.St. and the 14th Amendment to the Constitution of the United States of America; and (5) because the judgment of the trial court in the trespass to try title suit was null and void by reason of the citation served on appellant in that it failed to notify appellant that she had to file her written answer with the Clerk of the court in order to prevent default judgment from being taken against her, and thereby failed to give appellant proper notice as required by due process of law under the provisions of Art. 1, Sec. 19 of the Constitution of the State of Texas and the 14th Amendment to the Constitution of the United States of America.

A comprehensive statement is necessary. The appellant here is an uneducated colored woman and is a resident citizen of Los Angeles, California. The original action was one in trespass to try title involving 97.2 acres of land in Liberty County, Texas, and the plaintiffs in that action are also colored. Appellant, by the judgment in the original trespass to try title suit, lost an undivided one-third interest in the land which she had paid for with her own money. In the judgment which appellant seeks to have voided she was deprived of her substan-

tial interest in valuable oil lands, it being undisputed that the oil runs totalling approximately $60,000 have been withheld by the Oil Company pending the ultimate outcome of that suit.

Appellant first met the Paul family in November 1925 in Liberty County, Texas, and became a very close friend of the family. It appears that Kado Paul, sometime after he met appellant, went to California and later sent money to appellant to come to California and that she went there in June of 1927, and it appears that she lived with Kado and cared for Kado and his brother, Sidney Paul, in Los Angeles from June 1927 to November 1936, when she married Lyons. She was never married to Kado Paul. About 1930 Kado and Sidney Paul requested appellant to help them purchase the tract of land in question for the use of their father, Ed Paul. They assured appellant that when the land was purchased it would be owned jointly by all three in equal shares. Later the three of them mailed a total of $3,500 to Ed Paul to purchase the property and over one-third of the $3,500 was contributed by appellant from her savings which she had earned through the years as a housekeeper and a waitress; that without appellant's knowledge, Ed Paul purchased the land and took title to the land in his name, and he died intestate sometime prior to 1954, leaving the appellees as his heirs. Appellees, through their present attorney, filed trespass to try title suit against appellant on July 25, 1956. On August 6, 1956, appellant was served by non-resident citation at her home in California. Attached to the citation was a copy of plaintiffs' petition, which was signed by appellees' attorney. She alleges that when she was served with these papers she was under the care and treatment of a doctor and was confined to her bed because of a nervous breakdown and other physical troubles and she so states in her affidavit. She further says that Kado and Sidney Paul knew of her illness at the time. Appellant admits reading the citation which commanded her to appear and file written answer within a certain time but says that since the citation did not clearly state where to file her written answer and since appellees' attorney had signed the attached papers, appellant, with her limited ability to understand, believed it proper to send appellees' attorney her written answer. Thereafter, on August 10, 1956, she mailed to appellees' attorney the following communication which she intended to be a written answer in accordance with the papers served upon her. We quote this letter in full:

> "Ezzie Lyons
> "1727 West 35th. Place
> "Los Angeles 18, California

"Mr. Kerns B. Tayler
"Box 486
"Liberty, Texas.

"Dear Mr. Tayler

"this is in reply to your greeting dayted august 6 1956 I am sure I was with in my rights when i wrote the gulf coast oil co. may the 11, 1955 to have all payments stop on the oil deal untill they made further inquiry from Mr. Sidney Paul and Mrs. Lucy McBride as Mrs. McBride was Mr. Ed. Pauls house keeper also book keeper and she new who bought the place also the date and the amount paid the place was paid for by only three people and heare are they names

t/ Sidney Paul    s/ Sidney Paul
    Kado Paul         Kado Paul
and me Ezzie Lyons   Ezzie Lyons

we baught place on a partner ship deal to be devided in three parts so that is what i want is a third i dont no why mr. paul had the deeds maid out in his name as i mailed him all the money to buy the place and i dont no off any one giving him permission to do so the boys was just as surprise as I was when we new he had the place made out to him.

"i have inclosed some copys for you to look over if you need further proof

i have it will be glad to coperate with you any way i can i had hoped this could be settle out off court however it is up to kado if he wants to fight me thats up to him.

"do hope this is what you wants to no,

"Yours very truly,
"s/ Ezzie Lyons."

Attached to the foregoing letter were copies of instruments which appellant thought were important to show her ownership of one-third interest in the land in suit. These instruments consist of (1) a copy of an oil and gas lease on the land, executed by appellant in May 1955; (2) copy of an affidavit which had been mailed to appellees Kado and Sidney Paul for their signature and which would, if executed, show that appellant owned one-third interest in the land involved but which had not been signed at the time appellant wrote the foregoing letter; and (3) copy of letter dated December 9, 1955 written by Sidney Paul to appellant in which he acknowledged that the land was owned by Kado Paul, Sidney Paul and appellant in equal shares. Appellant received no reply from appellees' attorney to the foregoing letter. We quote a part of Mr. Taylor's affidavit in the motion for summary judgment:

"  *   *   *   that I did not know from this letter or from any other information that said Ezzie Lyons was ill or unable to answer or make her defense in said cause at said time or on the date judgment was entered in said cause; that on September 10, 1956, appearance day as to said defendant I appeared on behalf of plaintiffs, put on testimony and introduced the deed to the land in question from Bernard Stang et ux to Ed Paul, dated June 20, 1929, filed for record December 6, 1929, in Vol. 158, p. 30 of the Liberty County Deed Records; the father of Plaintiffs and through whom they claimed in said cause; that the Defendant Ezzie Lyons failed to appear or to inform me or the Court of any reason therefor; that I did not call to the attention of the trial court Ezzie Lyons' letter to me or file same in said cause as an answer for her therein; that the Court entered default judgment against said defendant; that on November 5, 1956, by letter of said date, attached hereto and marked 'Exhibit B', Ezzie Lyons wrote again to me and which letter I received Nov. 7, 1956, and which letter confirmed to me her understanding of the service in stating, 'it said to appear by filing a written answer;' for the first time by such letter was I informed that she was 'sick' and 'suffers from nose bleeds' and was 'not to get excited' from air travel; that immediately, the same day I received the letter, I wrote Ezzie Lyons the letter dated November 7, 1956, a true copy of which is attached hereto and marked 'Exhibit C,' advising her of all that had transpired, the default judgment and what she would have to do to preserve her rights; that I placed such letter in the U. S. Mails and on the envelope had my firm's name and return address, and addressed it to Ezzie Lyons to the same address she had given in her two previous letters; that the letter was not returned to me; *  *  *."

"That she did soon thereafter receive such letter and that *sometime during the following week after writing such letter I received a telephone call from an attorney in California whom she had retained and I advised him that the Court term had not ended and that he should move the Court to set aside the judgment before the end of the term if he intended to contest said cause; that no motion was ever filed by Ezzie Lyons or any attorney for her prior to the close of the Court term, which ended September 29, 1957.*" (Since the term ended September 29, 1956 and not September 29, 1957, and since Mr. Taylor's conversation with the California attorney was sub-

sequent to his letter dated November 7, 1956, the contradiction in the affidavit here underscored is obvious.)

We quote the letter of Ezzie Lyons of Nov. 5, 1956, addressed to Mr. Taylor:

"Dear Sir:

"I am writting you to find out if you rec. my ancer and papers to the petition I rec. on the 6 day of August dont know as I understood the Petition correctly it said to appear by filing a written answer

to the Kado Paul
suit being No. 16,495

"I was sick when I rec. the papers are still unde—— doctros care I suffers from Nose Bleeds and I am not to get excited are travel if so my nose bleeds for hours.

"Please let me no if you Rec. letter and when is Kado supose to have the trial,

"Yours very truly,
"Ezzie Lyons"

We quote Mr. Taylor's reply to the above letter which is dated November 7, 1956:

"Dear Miss Lyons:

"I am in receipt of your letter dated November 5, 1956, and also in receipt of your letter of August 10, 1956, reference Cause No. 16,495, styled Kado Paul, et al vs. Ezzie Lyons, in the District Court of Liberty County, Texas.

"As you can see from the copy of the petition which was served upon you, we represent the plaintiff's in the suit, Kado Paul, Otto Paul, Sterling B. Paul, Ona Paul, Sidney Paul and Audrey Paul. In order for you to defend a suit, you will have to employ an attorney and have him file an answer for you in this suit, unless you feel that you are able to do so. However, I wish to advise that since you have not answered this suit, the Court has already rendered judgment against you.

"For your information, it will now be necessary for you to bring a suit against all of these people whom we represent in order for you to prevail in your contention that you own a part of this property sued for.

"Yours very truly,
"Kerns B. Taylor."

Thereafter, appellant conferred with a Los Angeles attorney, who, in turn, conferred with the firm of Bell & Singleton, attorneys of Houston, Texas, and thereafter appellant filed her original petition for Bill of Review in February 1957 and filed her Second Amended Bill of Review in January 1958, on which she went to trial in this cause. The letter of November 7th was the first and only communication that appellant received from appellees or their attorneys concerning the law suit. Since the default judgment had been entered on September 10, 1956, this letter from appellees' attorney came at a time after the default judgment had become final and after the time within which appellant could have filed motion for new trial or perfected an appeal, the term of court having ended September 29, 1956. See also Art. 199 (75), Sec. 2, V.A.C.S.

As we understand the record, the only way for appellant to get relief was to file her petition for Bill of Review. Much has been written by our courts on the rule to be followed in the consideration of actions founded on bills of review in default cases. In Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126, our Supreme Court, speaking through Justice Hickman, and after a review of the questions relating to such matter, made this statement: "While trial courts have some measure of discretion in the matter, as, in truth, they have in all cases governed by equitable principles, it is not an unbridled discretion to decide cases as they might deem proper, without reference to any

guiding rule or principle." See also Birge v. Conwell, Tex.Civ.App., 105 S.W.2d 407, points 1 and 2 (writ ref.); Texas Employers Ass'n v. Cashion, Tex.Civ.App., 130 S.W.2d 1112, points 3–6, (writ ref.).

In Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 998, our Supreme Court made this statement of the rule: "Although the bill of review is an equitable proceeding, before a litigant can successfully invoke it to set aside a final judgment he must allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own." We think the factual situation here is governed by the foregoing pronouncement. There is no doubt that appellant here did allege a meritorious defense to set aside the final judgment she complained of and it was so stipulated. So, the sole question before the trial court and this court is: Was appellant prevented from making her defense by the fraud, accident or wrongful act of the opposite party unmixed with any fault or negligence of her own? We think the answer is "yes" for reasons which we shall hereinafter briefly state.

It is our view that appellees' attorney had before him sufficient information in appellant's letter of August 10th, together with the enclosures, to apprise him of the fact that appellant had a bona fide claim in this property, and that it was her intention to assert and defend such claim in the suit. Did appellees' attorney owe appellant the duty to file her letter of August 10th, together with the enclosures, with the clerk of the court? We doubt if he owed her that duty, but we do think that under all the facts and circumstances here detailed that appellees' attorney owed the appellant the duty to reply immediately to her letter of August 10th, and return her letter and the enclosures she sent him, and advise her that he could not represent her

in the litigation. Our view is that his failure to notify the appellant that he could not represent her and return her papers to her tenders an issue of extrinsic fraud and wrongful conduct on his part that the jury had a right to pass upon in order to determine whether or not appellant was negligent in this behalf. We do not mean to hold or infer that appellees' attorney here owed appellant the duty to advise her that she must seek other counsel, but we do think there is no escape from the fact that, as an attorney and as an officer of the court, it was his duty to advise appellant that he could not represent her and to return her papers and the enclosures to her. Assuming that appellant had made her way from California to Liberty, Texas, where counsel for appellees maintained his office and had approached counsel for appellees in his office and tendered to him the letter and enclosures in person, we think counsel for appellees would have been duty-bound to have handed her papers back to her and told her that he could not receive them because he represented the other side. Otherwise, counsel's failure to so inform appellant would have misled her and caused her to believe that she had complied with the citation. At all events, the jury would have a right to pass upon this question as to whether or not she was negligent in so doing. Appellant's letter of August 10th to Mr. Taylor apprised him of the fact that appellant was uneducated and that she was under a mistaken belief that her answer was sufficient and the place where it should be filed, and we think that when appellees' attorney failed and refused to notify appellant that he could not represent her and failed to return her letter and papers to her that he pursued a course of conduct which the jury would have a right to infer was designed to conceal from appellant and the court the true state of affairs and in effect lulled the appellant into a feeling of false security as well as inaction on her part. Under the foregoing conditions, appellees' attorney moved for default judgment while in possession of a written instrument, with enclosures attached, that he

should have known that appellant considered as her answer and her defense to the cause of action. In so doing he at least impliedly represented to the court that appellant did not intend to defend the suit and that she had not answered and to this extent misled the court. See 7 C.J.S. Attorney and Client § 23, p. 741.

Did the trial court, under this undisputed factual situation, have the right to assume and hold that the conduct of the appellant constituted negligence as a matter of law? We think the answer is "No." Our Supreme Court, in 1888, in the case of Gulf C. & S. F. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227, 228, speaking through Justice Gaines, made this statement: "Whether the act be negligence or not, depends upon the circumstances attending it; and the question is for the determination of the jury."

In Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585, 587, our Supreme Court, speaking through Justice Smedley, made this statement after a review of many authorities: "According to the authorities above cited and many others, 'In order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it.'"

There is no doubt that appellant's action in the writing of the letter of August 10, 1956, was not negligence per se because it was not contrary to a statutory duty. Nor do we think that her action in writing the letter and sending the answer to Mr. Taylor is so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it, under all of the surrounding facts and circumstances here detailed. Under our practice and under the express judicial interpretation given by our Supreme Court to the action and conduct of parties, the ques-

tion of negligence is one for the jury to pass upon. Under our practice, as interpreted by our judicial system, the jurors are not only the judges of the facts proved, but of the inferences to be drawn therefrom provided such inferences are not unreasonable. Our Supreme Court reaffirmed this doctrine in Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, point 6 on page 199. Under this undisputed factual situation, the attorney for appellees knew that appellant desired to contest the suit against her and desired to assert her rights to the property in question, and we think a jury would have had a right to infer under these circumstances that if appellees' attorney had advised appellant that he could not represent her and had written her a letter and returned the enclosures that she would have immediately sought legal counsel to represent her. But appellees' attorney chose not to do so on the theory that he owed her no duty. This court cannot agree with appellees' view in this behalf. This court thinks that every lawyer, under our code of ethics and under the general practice, who files a suit and is contacted in any manner by one of the parties who has been sued, owes the duty to such party to advise him immediately to the effect that he is on the other side of the litigation and that he cannot render any service whatsoever to such party making the inquiry of him. This court believes that the foregoing standard of conduct has been adhered to by the bar of Texas and throughout the American jurisdiction substantially without exception and that this standard should be maintained. The Hon. Charles S. Rhyne, a past president of the American Bar Association, said: "Our system of government is no stronger than our courts, and our courts are no stronger than the strength of the public's confidence in them." Since appellees' attorney was an officer of the court, he owed the court the duty not to conceal material facts.

Since this is a summary judgment proceeding, the rule is: "The duty of the court hearing the motion for sum-

mary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. * * * 'The underlying purpose of Rule 166–A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact.' The burden of proving that there is no genuine issue of any material fact is upon the movant, and 'All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment.'" See Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931. See also Tigner v. First National Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85. Our Supreme Court has not seen fit to change this rule.

We think that the trial court erred in refusing to let appellant go to trial before a jury on the issues tendered by the bill of review, and that his failure to do so will cause this cause to be reversed and remanded. Appellant's points, in so far as they are in harmony with this opinion, are sustained. In all other respects, they are overruled.

Accordingly, the judgment is reversed and the cause remanded.

HALE, Justice (concurring).

While this suit involves a summary judgment, which is a legal action, it is primarily an action for bill of review to set aside a default judgment. Being an action for bill of review, it is primarily a proceeding in equity, and should be viewed as a whole as an equitable proceeding rather than an action at law. Therefore, it occurs to me that in consideration of the case, the courts should consider the fundamental distinction between law and equity. There is a vast distinction between law and equity which I shall not here discuss. It must suffice for me to here say that such words as "justice", "jury", "jurisdiction" and "ju-

risprudence" are derived from the Latin word "jus".

Justice is not blind, although in some instances appearing in the reported cases of this State such appears to be true. For the purpose of this appeal, we must assume that appellant is the owner of the land in controversy, and that she has commenced her action to gain possession of her land within two years after finding out that a claim to the same was being asserted adversely thereto. She has not been able to develop her evidence before a jury, and I concur in the judgment whereby the order and judgment here appealed from is reversed and the cause remanded for a jury trial.

McDONALD, Chief Justice (dissenting).

This is a bill of review brought by appellant herein to set aside a default judgment. The Trial Court entered summary judgment that appellant take nothing. Appellees, Kado Paul, Sidney Paul and four others filed suit in trespass to try title against appellant for certain land, on 25 July 1956, claiming such land as heirs of Ed Paul (deceased), who they alleged and proved procured the land by warranty deed dated 20 June 1929, and recorded in Liberty County Clerk's office 6 December 1929. Appellant lives in California and was served the regular nonresident notice commanding her to appear by "filing a written answer to the plaintiffs' petition at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days from the service hereof, before the Honorable District Court of Liberty County, Texas, at the Court House in Liberty, Texas." Such notice was signed by the Clerk of the District Court of Liberty County and had attached thereto a copy of the plaintiffs' petition. Such is regular in every respect (Rules 101, 106, 107, 108 Texas Rules of Civil Procedure) and told her exactly what to do. Such citation was dated 25 July 1956, and served on Ezzie Lyons on 6 August 1956 by a Deputy Sher-

iff in California. Thereafter on 10 August 1956 Ezzie Lyons wrote the letter quoted in the majority opinion, to the attorney for appellees, and told him she owned ⅓ of the land, she having furnished ⅓ of the money for its purchase price. She in effect alleged to the appellees' attorney her contentions in the matter and closed with a statement that she had hoped that the matter could be settled out of court, but that if appellees wanted to fight the case that was up to them. Appellees' attorney did nothing upon receipt of the foregoing letter. Appellant did not file an answer and appellees' attorney took judgment by default for appellees against appellant on 10 September 1956. Some months later appellant filed the case at bar, in the nature of a bill of review to set aside the 10 September 1956 default judgment taken against her. Appellees made motion for summary judgment and the Trial Court granted such motion, rendering summary judgment that appellant take nothing on her bill of review action. Appellant appealed, and the majority of this court has reversed and remanded the cause, holding in effect that appellant's writing the letter to appellees' lawyer tenders a jury issue as to whether she was free from negligence in not filing a timely answer; and further holding that appellees' attorney was under a *legal duty* to reply to appellant's letter and return her enclosures to her, and that his failure to do so tendered a jury issue as to whether appellees' attorney was guilty of extrinsic fraud.

The Supreme Court's opinion in Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 998, is determinative of this case. In such case Hagedorn was sued by Alexander for damages to Alexander's car, occasioned when Alexander's car ran into a mule alleged to be Hagedorn's, which was on the highway in violation of the stock laws. Hagedorn was served with citation and went to the courthouse and talked with the District Clerk. The Clerk told Hagedorn that court was not in session and assured him he would notify him further

when he was to come in. Hagedorn filed no answer and Alexander took judgment by default against Hagedorn. Hagedorn filed bill of review to set aside the default judgment. The Supreme Court, in reversing judgments of the District Court and Court of Civil Appeals, 220 S.W.2d 196, which set aside the default judgment against Hagedorn, said:

"Although the bill of review is an equitable proceeding, before a litigant can successfully invoke it to set aside a final judgment he must allege and prove: (1) a meritorious defense to the cause of action * * * (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own."

(In the Hagedorn case it was found that Hagedorn had a meritorious defense to the cause of action, and in the case at bar it has been stipulated that for this proceeding only appellant is deemed to have a meritorious defense to the cause of action).

The court further said in the Hagedorn case:

"Because it is fundamentally important in the administration of justice that some finality be accorded to judgments, these essentials have been uniformly recognized by our courts; therefore, bills of review, seeking relief from judgments 'are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted'; and the rules are not to be relaxed merely because it may appear in some particular case that an injustice has been done. * * * 'Endless litigation in which nothing was ever finally determined, would be worse than occasional miscarriages of justice.' " * * * (226 S.W.2d at page 998).

"Reliance upon the statements or promises of third persons even though they may occupy some official position or seem to be in a position to have better information than the party himself, does not ordinarily entitle to relief for failing to make a defense" * * * (226 S.W.2d at page 998).

"Under any other rule it would be very difficult if not impossible for a trial court to function in the field of default judgments. For it would mean that before the court could enter a valid judgment against a non-answering defendant, he would have to call the clerk, the sheriff and perhaps all other courthouse officials and their deputies to ascertain whether any of them had made any extra-official agreement to notify the defendant when his case would be on call * * *. Obviously, such a situation would be intolerable" * * * (226 S.W.2d at page 998).

"Again, Hagedorn cannot prevail because he has not shown that he was prevented from making his defense to the Alexanders' suit by their fraud or wrongful act." (226 S.W.2d at page 1001).

While Ezzie Lyons did not request appellees' lawyer to do anything, or to reply to her letter—but had she done so the Hagedorn case is a complete answer:

"When respondent requested the district clerk to notify him when he should return to court to defend the suit he was requesting the clerk to undertake something that the latter was in no sense required to do in his official capacity. So, as to that, the clerk became respondent's agent, and negligence of the clerk must be charged to respondent, it became his own negligence." 226 S.W.2d at page 1001.

It seems that the Hagedorn case is here applicable. It would indeed be very difficult for a Trial Court to function in the field of default judgments if, before a court could enter a valid judgment against a non-answering defendant, he would have to check with the plaintiff's attorney to see if the defendant had in any manner communicated with him; the nature of the communication, if any; and whether plaintiff's attorney had replied to defendant, and if so the nature of the reply communication.

The case at bar is actually a stronger case for denying the bill of review than was the Hagedorn case. In the Hagedorn case Hagedorn filed no answer because he was assured by the District Clerk that he would be notified further. In the case at bar Ezzie Lyons had not been assured anything by anyone. The most that can be said of her position is that she *perhaps thought,* but erroneously so, that she had filed an answer in compliance with the citation.

Appellant's brief contends that had appellees' counsel informed the Trial Court of the letter he had received from Ezzie Lyons, that the Trial Court probably would not have entered the default judgment. The majority opinion states, that when appellees' counsel moved for the default judgment he impliedly represented to the Trial Court that appellant did not intend to defend the suit and had not answered and to this extent misled the court. Had appellees' counsel told the Trial Court of Ezzie Lyons' letter, the Trial Court would have had to enter the same judgment that it did *because no answer was filed in the case. But, in any event, the Trial Court had the matter with a full disclosure of all the facts, before him on the bill of review to set aside the default judgment, and with all the facts before him, refused to set aside the default judgment.*

We now revert to Item 2, supra, of what a litigant must allege and prove to set aside a judgment by bill of review. Was appellant prevented from filing her answer by fraud, accident, or the wrongful act of appellees' attorney? Appellees' attorney did nothing. Was he under a *legal duty* to reply to Ezzie Lyons' letter and return her enclosures to her? The majority opinion

says yes. I know of no basis for holding such to be his legal duty. In the absence of such being his legal duty, then his failure to reply to the letter cannot make a jury issue, as to whether appellant was prevented from filing her answer by the fraud or wrongful act of appellees' attorney. The impact of the majority holding herein would be tremendous upon future litigation. Under such, no attorney will be safe in taking a default judgment if he has been contacted in person, by phone, or by letter, by the party sued and who has been served, (but who files no answer). Indeed almost all a defendant who has been served need do is to write to the plaintiff's attorney and allege to him facts which, if true, constitute a defense to the action—go his way, and any default judgment taken can be later set aside.

In addition to alleging and proving that she was prevented from filing timely answer by the fraud or wrongful act of the opposite party, appellant must allege and prove that such was "unmixed with any fault or negligence of her own." (Item 3, supra).

The majority opinion (on page 950 of 321 S.W.2d) states that appellant was not negligent per se, etc., in writing to appellees' lawyer. Perhaps this is true—*but,* the negligence referred to in the Hagedorn case and which must be negatived, is negligence on the part of Ezzie Lyons in *not filing her answer in the case,* as called for in the citation. Can the fact that Ezzie Lyons wrote a letter to appellees' lawyer and then filed no answer, (presumably waiting for a reply from him), excuse her from not filing a timely answer? Can the fact that Ezzie Lyons mistakenly thought she was filing her answer (which does not appear from a reading of her letter) in writing to appellees' counsel, excuse her from not filing a timely answer? The citation with which she was served told her in plain language of easy understanding when, where, and with whom she was required to file her answer. Ezzie Lyons can read and write. Such circumstances can no more excuse appellant from not filing her answer in the case, as called for by the citation, than did the District Clerk's promise of further notice, excuse Mr. Hagedorn in the Hagedorn case.

It appears that: 1) Appellees' attorney was under no legal duty to answer appellant's letter, in which event he could not have prevented her from answering through extrinsic fraud or wrongful act; 2) Appellant is guilty of negligence under the facts, in not filing a timely answer as called for by the citation; 3) the majority opinion is in conflict with Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996; and with Garcia v. Ramos, Tex.Civ.App., 208 S.W.2d 111, W/E Refused.

The judgment of the Trial Court should be affirmed.