Oscar MARK et ux., Appellants,

v.

BELROSE CORPORATION, Appellee.

No. 4091.

Court of Civil Appeals of Texas.

Waco.

April 25, 1963.

Rehearing Denied May 9, 1963.

Horace F. Brown, Gay C. Brinson, Jr., Houston, for appellants.

Baker, Botts, Shepherd & Coates, and Finis Cowan, Houston, for appellee.

WILSON, Justice.

Summary judgment was rendered for defendant landlord in plaintiff-tenants' action seeking damages for personal injuries resulting from the landlord's failure to repair the rented premises after an agreement to do so.

Lessor answered that plaintiffs had superior knowledge of the condition of the premises, knew the risks attendant to their use, and that recovery was precluded by assumption of risk and voluntary exposure to known danger. It alleged the tenants' conduct in these and other respects was negligent. The pleadings, the depositions of plaintiffs and the realty agent of defendant comprised the record considered.

The record raised a genuine issue as to the following facts, or made them undisputed: Five years before the accident, defendant Belrose Corporation employed a commission realty agent to manage and rent its properties. The agent made an oral agreement with plaintiffs, Mark and his wife, for a cash rental month-to-month tenancy of the two upper floors of an apartment-hotel. The tenants were to give a month's notice to quit. The occupancy continued until after the date of injury. It was agreed plaintiffs would live in the building and sublet eleven other apartment units on these floors, operate them; and "do the minor routine interior repairs, paint and maintenance work; nothing like plastering or anything that would run into money." Any repairs "of a substantial nature" including "keeping the roof in repair, were the responsibility of the landlord."

Shortly after plaintiffs' possession began, the agent and defendant's president and major stockholder received actual notice that the roof of the building was leaking, resulting in damage to the plaster ceiling in several units. Mark continued to make complaints to the landlord of this condition, and having some building and construction experience, made several temporary repairs to the roof himself. On one occasion he was injured when plaster fell from the ceiling of an apartment at the opposite end of the floor, and was compensated by the corporation for his damages. On another occasion, the tenant testified, plaster fell over the staircase; and he had removed sagging or wet plaster from the ceiling of five apartments. The "management of the place was entirely in the control" of plaintiffs. The tenant testified the roof and plaster ceilings "leaked and dripped the whole five years".

Three or four months before the accident,—upon plaintiffs' complaint the apartments were being vacated by subtenants because of wet ceilings, plaintiffs' own threat to abandon the premises, and insistence of the agent—the landlord expressly agreed to replace the roof in consideration of the continued occupancy, payment of rental by plaintiffs, and the agreement by the tenant to thereafter replaster the ceiling in return for a credit on unpaid rents. The landlord had unsuccessfully attempted to induce a contractor to undertake less expensive repair of the existing 50-year-old asphalt and gravel roof, and agreed to replace the roof, "right away." Defendant knew the roof leaked and that "some plaster had actually fallen; some chunks of plaster." The roof was replaced after the accident.

Mrs. Mark entered one of the apartments, just vacated, to get a rug which the subtenant had borrowed. She knew the ceiling plaster was water-spotted. She testified she had not known that plaster had fallen in other apartments, but she was familiar with the condition of the roof, and the fact her husband had removed plaster from another ceiling; that she had mopped apartment floors wet from leaks after rains; that the plaster was not sagging; that she had told lessor's president that plaster from one ceiling had to be removed "or it would have fallen down", and that the building was structurally affected and "weakened by this water"; that it had rained hard the night before, and she went to retrieve her rug because water was leaking down on it. She did not consider the ceiling was unsafe, and didn't "foresee or expect that the ceiling was going to fall"; she did not look up at it. As she reached to pick up the rug the ceiling cracked, and plaster, an inch thick covering an area of three feet, fell on her, resulting in injury.

Mr. Mark narrated his continuing complaints to the landlord as to the condition of the roof and ceilings during his five-year occupancy. He knew the plaster was "exceedingly heavy", having "taken down quite a bit." He testified: "I knew it was going to fall in the apartments I wouldn't attempt to rent," and "you take and let old patent plaster like that get wet, mister, it is only a matter of time until it's going to fall." He examined the ceiling where the accident occurred just after it was vacated, when the subtenant notified him the roof was leaking, and saw a damp spot in the plaster, 12 or 14 inches in diameter. It was not sagging. He testified he did not think it was serious or that there was danger of the plaster falling. He planned to close the unit, however, without renting it further.

Marks testified he and his wife "probably knew more about the premises there" than did "anyone else during the time" he rented them. He testified he had told lessor's president that the "entire third floor was a hazard" and "the roof was leaking so badly that there was no telling when plaster would collapse." He knew plaster had fallen over the stairway several months before. He had previously removed ceiling plaster from five other units, one of which was in the same wing where his wife's injury occurred. He had told the landlord that if the roof wasn't taken care of he "wasn't going to stay there" and that he "wasn't going to be responsible." He testified "patent plaster, once it gets wet begins to deteriorate; and the more water that is added, the faster the deterioration, until it just simply rots and there is nothing to it."

The landlord defends the summary judgment on the grounds (1) that the tenants, having exclusive control of the premises, had equal or superior knowledge of the danger and ability to foresee and avert harm; (2) that lessor breached no duty to the tenants, the danger being open and obvious; and (3) the tenants voluntarily exposed themselves to a known danger so as to be contributorily negligent as a matter of law.

The landlord further urges its promise to replace the roof was unilateral or gratuitous, creating no contractual obli-

gation; and "the evidence concerning it is too vague, conflicting and uncertain to evidence a contractual obligation." We reject the latter contention, (a) because there was at least a genuine issue of fact both as to the making of the agreement, the existence of consideration and the other essential elements of contract, and (b) because the tenancy was from month to month, and (if the original agreement to repair is ignored), there is adequate evidence to show the landlord's specific agreement to replace the roof was made prior to the beginning of the monthly term or period in which injury occurred. Bachrach v. Estefan, Tex.Civ. App., 184 S.W.2d 640, 641; Sellers v. Spiller, Tex.Civ.App., 64 S.W.2d 1049, 1051; McKibbin v. Pierce, Tex.Civ.App., 190 S.W. 1149; 32 Am.Jur., Secs. 72–73, pps. 87, 88; McAdam, Landlord and Tenant (5th ed.) 148.

Although we have undertaken to fairly summarize both undisputed and issuable facts which the parties emphasize without applying the familiar guides governing authorization of summary judgments under Rule 166–A, Texas Rules of Civil Procedure, the following are the material facts as to which there is at least a genuine issue raised: (1) Lessor was under a contractual duty to repair the defective roof. (2) Lessor had notice of the defective condition of roof and plaster ceiling, and that it rendered use of the property unreasonably dangerous. (3) Lessor negligently failed to repair the defect, proximately resulting in the injuries complained of. These facts standing alone, we think, would preclude rendition of the summary judgment. Harvey v. Seale, Tex.Sup., 362 S.W.2d 310, 312; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 618; see 3A Thompson, Real Property (1959) Secs. 1239–1248; I American Law of Real Property (1952) Sec. 3.79, p. 3521; 2 Restatement, Torts (1934) Sec. 357; and the judgment may only be sustained by one or more of the enumerated grounds relied on by appellee.

We think the landlord's contention that it owed the tenant no duty by virtue of a condition which was open and obvious is foreclosed against it. The landlord "will not be heard to say that she voluntarily exposed herself to the danger, and that he owed her no duty", said the Supreme Court in Harvey v. Seale, Tex.Sup., 362 S.W.2d 310, 313. Justice Walker there delineates the distinction between absence of duty arising ex delicto in the relationship of owner and invitee where the latter has knowledge of the danger (as in McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391) and existence of such duty arising ex contractu in the relationship between landlord and tenant, with the attendant right of use.

As in each of the latter cases, the determinative factor in the present case, after the "duty" question, is simply whether the defensive issues of the tenants' negligence as a proximate cause of the damages are established against them as a matter of law. To hold they are, lessor relies primarily on Pollack v. Perry, Tex.Com.App., 235 S.W. 541. There the tenant knew there was a sunken place in a covered floor, knew of its defective and dangerous condition, but "she had forgotten about it." She reported the "sunken or sagging condition" to the landlord, and "considered it dangerous". She even "set a hatrack over it," which someone removed, although the cost of repair was small. It was "open and obviously apparent". It was held failure to inspect, failure to repair, failure to use substantial means of avoiding the defect, "combined with her failure to 'notice this place' and to 'pay any mind to it'" manifested a lack of care constituting contributory negligence as a matter of law. In that case there was an undisputed recognition and appreciation, not only of condition, but of danger. Ours, we think, is not quite such a case.

In order that the tenants' conduct may be held contributory negligence as a matter of law it must be so opposed to the

dictates of common prudence that it may be said, without hesitation or doubt, that no careful person would have so acted under the circumstances. Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585, 587; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W. 2d 609, 621, 23 A.L.R.2d 1114; Texas & New Orleans Railroad Co. v. Day, 159 Tex. 101, 316 S.W.2d 402, 406. Here, knowledge of the condition is not enough. It must further be said that plaintiff, appreciating the danger of voluntary exposure to it so as to make the conduct the result of an intelligent choice, did that which no person of ordinary prudence would have done, and as to which reasonable minds could not differ. Although we recognize the admissions of plaintiffs make this a case difficult of decision, that very difficulty leads us to conclude that after every reasonable intendment deducible from the evidence in this case is given effect, it may not be said there is no genuine issue of fact.

Reversed and remanded.